IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NITTANY OUTDOOR ADVERTISING, LLC and STEPHANAS MINISTRIES, | : : : : | Case No. 4:12-cv-00672 |
| Plaintiffs | : : | (Judge Brann) |
| v. | : : | |
| COLLEGE TOWNSHIP, | : : | |
| Defendant. | : | |

**MEMORANDUM**

May 20, 2014

For the reasons that follow, plaintiffs's motions for partial summary

judgment and for permanent injunctive relief (ECF Nos. 25 & 28) are each granted

in part and denied in part.

## I.    General Background

On April 11, 2012, plaintiffs Nittany Outdoor Advertising, LLC, and

Stephanas Ministries (hereinafter, "Nittany" and "Ministries") filed a complaint

seeking redress of defendant College Township's (hereinafter, the "Township")

denial of Nittany's applications to post three billboards bearing the Ministries's

messages along East College Avenue, "the Township's most heavily trafficked

commercial corridor." (ECF No. 1 ¶ 7). Plaintiffs claimed that the Sign Ordinance

under which the Township Zoning Officer denied Nittany's applications by

separate letters, each dated March 13, 2012, violated the First Amendment of the

United States Constitution and the Constitution of the Commonwealth of

Pennsylvania.[1] (Id. ¶¶ 16, 19-21). Plaintiffs sought damages as well as declaratory,

injunctive and other equitable relief.

On July 3, 2012, plaintiffs filed an amended complaint reiterating the

allegations of the original complaint and adding that, "[a]fter Plaintiffs' Complaint

was filed on April 11, 2012, and as a clear result thereof, the Township

commenced the process of amending the [challenged Sign] Ordinance," a process

plaintiffs projected would end with the adoption of an amended ordinance no

sooner than August 2012. (ECF No. 11 ¶ 14). The amended complaint also asserted

that Nittany had submitted two additional sign permit applications that the

Township Zoning Officer rejected by letters dated June 19, 2012 "for reasons

similar to those described in the March 2012 letters." (Id. ¶ 19).

On July 17, 2012, the Township filed a motion that Chief Judge Christopher

---

[1]Plaintiffs asserted that the Township was liable for violating their First Amendment rights under 42 U.S.C. § 1983, which provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .."

C. Conner (who was then presiding over this matter) construed as a ripeness challenge to this Court's subject matter jurisdiction. (See Mem. & Order, Jan. 15, 2013, ECF No. 24 at 1).  In a January 15, 2013 memorandum opinion that relied primarily on the United States Court of Appeals for the Third Circuit's decision in Peachlum v. City of York, 333 F.3d 429 (3d Cir. 2003) (Rosenn, J.), Chief Judge Conner rejected the Township's argument that, because the plaintiffs challenged the Sign Ordinance in federal court without first appealing their permit denials to the Township's Zoning Hearing Board, the controversy in this Court was unripe.[2] (See Jan. 15, 2013 Mem. & Order at 2-3).  Two days later, on January 17, 2013, Chief Judge Conner reassigned the case to the undersigned.

On March 1, 2013, plaintiffs filed motions for partial summary judgment (ECF No. 25) and for permanent injunctive relief (ECF No. 28).

## II.     Summary Judgment and Permanent Injunction Standards

Summary judgment is appropriate where "the movant shows that there is no

---

[2]In spite of Chief Judge Conner's ruling, the Township maintains that plaintiffs's "challenge under the Pennsylvania Constitution, as well as the state law land use component of this matter, is not properly before this Court" because plaintiffs did not appeal to the Zoning Hearing Board. (Def.'s Opp'n Br., Apr. 10, 2013, ECF No. 44 at 10-12). Concluding that plaintiffs lack standing to mount their challenges to the Sign Ordinance arising under the Pennsylvania Constitution, see infra, the Court does not consider whether plaintiffs's failure to appeal to the Zoning Hearing Board also deprives this Court of jurisdiction.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" where it "might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is "genuine" where "the evidence is such that a reasonable jury," giving credence to the evidence favoring the nonmovant and making all reasonable inferences in the nonmovant's favor, "could return a verdict for the nonmoving party." <u>Id</u>.

For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "citing to particular parts of materials in the record," or by "showing that the materials cited [by an adverse party] do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Thus, where the moving party's motion is properly supported and his evidence, if not controverted, would entitle him to judgment as a matter of law, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only

4

by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson</u>, 477 U.S. at 250. In the face of the moving party's evidence, the nonmoving party's mere allegations, general denials or vague statements will not create a genuine factual dispute. <u>See Bixler v. Cent. Pennsylvania Teamsters Health & Welfare Fund</u>, 12 F.3d 1292, 1302 (3d Cir. 1993). Only citation to specific facts is sufficient. <u>Anderson</u>, 477 U.S. at 250.

Before the Court considers whether plaintiffs are entitled to a permanent injunction, plaintiffs must succeed on the merits of their claims. <u>See Ciba-Geigy Corp. v. Bolar Pharm. Co., Inc.</u>, 747 F.2d 844, 850 (3d Cir. 1984) ("In deciding whether a permanent injunction should be issued, the court must determine if the plaintiff has actually succeeded on the merits (i.e. met its burden of proof). If so, the court must then consider the appropriate remedy."). If the plaintiff prevails on the merits, then the Court must consider whether "the moving party will be irreparably injured by the denial of injunctive relief," whether "the granting of the permanent injunction will result in even greater harm to the defendant," and whether "the injunction would be in the public interest." <u>Shields v. Zuccarini</u>, 254 F.3d 476, 482 (3d Cir. 2001).

## III.   Facts

Despite plaintiffs's penchant for larding their averments with argument and

opinion more appropriate for other stages of litigation, the Court has extracted the following undisputed material facts from the parties's L.R. 56.1 submissions. See L.R. 56.1 (requiring party moving for summary judgment to submit "short and concise statement of the material facts . . . as to which the moving party contends there is no genuine issue to be tried," and requiring nonmoving party to "include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the [moving party's] statement . . ., as to which it is contended that there exists a genuine issue to be tried").

As the "Outdoor Advertising" part of its name suggests, plaintiff Nittany is in the business of disseminating its customers's commercial and noncommercial messages by way of outdoor signage. (Pls.'s Facts, Mar. 1, 2013, ECF No. 27 ¶ 2). Plaintiff Stephanas Ministries is a "Christian-based charitable and religious organization headquartered in Greensburg, Pennsylvania." (Pls.'s Facts ¶ 3). Except where distinction is necessary or helpful, this memorandum will refer to plaintiffs collectively as "Nittany" hereinafter.

Defendant College Township is a political subdivision of Centre County and the Commonwealth of Pennsylvania and regulates the posting of outdoor signs under its zoning code. (Def.'s Facts, Apr. 4, 2013, ECF No. 38 ¶ 7). Signs are governed specifically by chapter 170, the "Sign Ordinance," which provides that,

6

"[w]ith the exception of signs listed in Article II, no sign may be constructed, installed, posted, displayed or modified without first obtaining a sign permit approving the proposed sign's size, design, location and display, as well as a license in accordance with Article VII of this chapter."[3] Coll. Twp. Code § 170-3.

Until August 2012, the Sign Ordinance provided that permits were not to be granted for any "off-premises sign," defined as "[a] sign which advertises or directs the public to a business product or service not present on the property where said sign is located, including but not limited to billboards and off-site directional signs." Coll. Twp. Code §§ 170-4. & 170-7.I. The Ordinance defined "billboard" as:

> A sign which directs attention to a business, commodity, service, entertainment or attraction which is sold, offered or existing elsewhere than upon the same lot where such sign is displayed. Billboards offer space which is generally leased or rented by the owner thereof to others for the purpose of conveying a commercial or noncommercial message. For the purposes of this chapter, a billboard shall be considered an off-premises sign.

Id. § 170-4. The Ordinance also restricted the location, sign face area, number, and height of any "freestanding sign," defined as "[a] sign that is not attached to a building and which is supported permanently upon the ground by poles, pedestals or braces. Such signs include what are commonly called 'ground pole and monolith

---

[3]This provision will be referred to as the "permit requirement" hereinafter.

signs.'" Id.

Several College Township landowners have (in exchange for the promise of compensation, naturally) given Nittany permission to post billboards on their respective properties adjacent to East College Avenue, the Township's most heavily trafficked commercial corridor. (Pls.'s Facts ¶¶ 11-12). On March 7, 2012, Nittany submitted three applications to the Township for permission to post billboards, intending to use the billboards to promote the work of the Ministries. (Id. ¶¶ 14-15). The Township's "Sign Permit Application" form – in addition to requesting information about Nittany itself, the location of Nittany's proposed installation, and the identity of the property owner and sign fabricator associated with the installation – required Nittany to describe various aspects of each proposed sign, including message and type (e.g., digital billboard); whether single- or double-faced; the height, width, and total square footage of the sign face; the total height of the installation; the installation's distance from property lines and projection from buildings; and the location of streets adjacent to the proposed sign property. (Pls.'s Ex. D, Mar. 1, 2013, ECF No. 27-4).

Each of Nittany's three applications was denied by separate letters, each dated March 13, 2012. (Id. ¶ 16). In each letter John Franek, Jr., the Township's Zoning Officer, explained that Nittany's proposed signs violated the Sign

8

Ordinance of College Township in multiple ways. Specifically, Nittany's proposal

– to erect what Franek, in accordance with definitions provided by the Sign

Ordinance,  classified as "freestanding" "off-premise signs" – violated (i) the

Ordinance's prohibition on off-premise signs (citing Coll. Twp. Code § 170-7.I.);

(ii) location restrictions on freestanding signs (citing Coll. Twp. Code § 170-

8.A.(2)); (iii) limitations on the maximum area of freestanding sign faces (citing

Coll. Twp. Code § 170-8.B.(1)); (iv) limitations on the maximum number of

freestanding signs permitted on nonresidential developments (citing Coll. Twp.

Code § 170-8.C.(1)); and (v) limitations on the maximum height of freestanding

signs (citing Coll. Twp. Code § 170-8.D.).[4] (Pls.'s Ex. B, July 3, 2012, ECF No.

11-2). Franek's letters further explained that Nittany could appeal his decisions to

the Township's Zoning Hearing Board or seek a variance from the Sign Ordinance

(id.), but Nittany chose not to exercise these options, instead filing its federal

complaint with this Court  on April 11, 2012.

On June 5, 2012, Nittany submitted two additional sign permit applications.

(Pls.'s Facts ¶ 20). Franek rejected these applications by letters dated June 19,

---

[4]Nittany's applications numbered 2012-68 and 2012-69 were denied for the
additional reason that the proposed signs violated the Sign Ordinance's prohibition
on signs that "obstruct the vision of drivers or obstruct or detract from the visibility
or effectiveness of any traffic sign or control device on public streets and roads"
(citing Coll. Twp. Code § 170-7.D.). (Pls.'s Ex. B, July 3, 2012, ECF No. 11-2).

2012. (Id. ¶ 21). The letters explained that each proposal to erect a freestanding sign violated (I) the Ordinance's limitations on the maximum area of freestanding sign faces (citing Coll. Twp. Code § 170-8.B.(1)); (ii) limitations on the maximum number of freestanding signs permitted on nonresidential developments (citing Coll. Twp. Code § 170-8.C.(1)); and (iii) limitations on the maximum height of freestanding signs (citing Coll. Twp. Code § 170-8.D.). (Pls.'s Ex. D, July 3, 2012, ECF No. 11-4). Franek also faulted Nittany for including deficient site plans along with the applications. (Id.). Nittany filed its amended complaint on July 3, 2012.

The amended complaint lodged as-applied and facial First Amendment challenges to the Township's Sign Ordinance on the grounds that the Ordinance is "impermissibly content-based," "impermissibly suppresses noncommercial speech," "grants unfettered discretion to Township officials," and "fails the requirements for proper regulation of commercial speech." (Am. Compl. ¶ 23). Further, the amended complaint asserted that the Ordinance's ban on off-premises signs violates Pennsylvania law. (Id. ¶ 27).

In August 2012, the Township amended its Sign Ordinance with the stated intention of allowing "off-premise advertising through the placement of billboards within College Township" while "also providing protection to residents and motorists viewing the billboards." (Pls.'s Ex. E, Mar. 1, 2013, ECF No. 27-5).

Accordingly, the amendment, <u>inter alia</u>, eliminated the Township's prohibition on off-premises signs and allowed for the posting of billboards as long as the installation complies with restrictions on billboard location, area, number, height, setback, and lighting. (<u>Id.</u>).

## IV.    Discussion

In support of its motion for summary judgment and permanent injunctive relief, Nittany argues that the Township's pre-amendment Sign Ordinance and amended Sign Ordinance violate the First Amendment and the Pennsylvania Constitution for multiple reasons, including the Ordinance's failure to meet the strict scrutiny standard applicable to content-based regulations, the Ordinance's preference for commercial over noncommercial speech (together, Nittany's "substantive" challenges), and the Ordinance's vesting of unbridled discretion in Township officials.

In part (a) of the following discussion, the Court holds that Nittany is without standing to pursue its substantive attacks on the Township's pre-amendment Sign Ordinance. In part (b), the Court holds (on the merits) that Nittany is not entitled to summary judgment on its substantive challenges to the Township's amended Sign Ordinance. Beginning with part (c), the Court takes up Nittany's argument that the Ordinance vests Township officials with unbridled

discretion, determining that Nittany has standing to pursue this claim. In part (d),

the Court holds that the Ordinance vests Township officials with unbridled

discretion in violation of the First Amendment. In part (e), the Court engages in

severability analysis to determine whether any part of the Ordinance should remain

in effect. Finally, in part (f), the Court determines whether Nittany is entitled to the

various remedies it seeks.

**(a)      Nittany lacks standing to pursue its substantive challenges to the
        Township's pre-amendment Sign Ordinance.**

Nittany asserts that the Township's pre-amendment Sign Ordinance[5] – i.e.,

the Ordinance as it stood when Nittany's sign permit applications were denied –

violates the First Amendment. Specifically, Nittany argues that the Township's ban

on off-premises signs, "coupled with [the Township's] failure to identify

permissible noncommercial content," violates the First Amendment because

"[s]uch a prohibition . . . is content-based and inherently favors commercial over

---

[5]Because Nittany claims that it is entitled to damages resulting from
application of the pre-amendment Sign Ordinance to its sign permit applications,
the Township's passage of a curative amendment to the Ordinance (assuming
arguendo that the amendment effectively cured the Ordinance's alleged
deficiencies) does not moot Nittany's challenge to the pre-amendment Ordinance.
See Khodara Envtl., Inc. v. Beckman, 237 F.3d 186, 196 (3d Cir. 2001) (Alito, J.)
(amendment of statute does not divest plaintiff of concrete stake in potential
entitlement to damages resulting from wrongful enforcement of pre-amendment
statute).

noncommercial speech," and "cannot possibly meet" the strict scrutiny standard

applied to content-based prohibitions on speech. (Pls.'s Summ. J. Supp. Br., Mar.

1, 2013, ECF No. 26 at 6-7). The ban on off-premises signs also, according to

Nittany, violates the Pennsylvania Constitution. (Pls.'s Summ. J. Supp. Br. at 6).

The Court does not reach the merits of these challenges to the Sign

Ordinance because Nittany lacks standing to pursue them. The federal courts –

including this one – are empowered to expound the law only to the extent

necessary to decide actual controversies between parties. See DaimlerChrysler

Corp. v. Cuno, 547 U.S. 332, 341 (2006) ("If a dispute is not a proper case or

controversy, the courts have no business deciding it, or expounding the law in the

course of doing so."). If the Court were empowered to decide legal issues having

no immediate practical impact on litigants, then the quality of the Court's decisions

would suffer (assuming, reasonably, that parties are better advocates when they

have skin in the game) and, even worse, the Court would be unleashed to opine at

will on Constitutional questions and aggressively strike down laws, upsetting the

balance of power of the federal courts vis a vis the federal policy-making branches

and the states. See generally id. at 340-42. Subjecting a plaintiff's claim to Article

III standing analysis ensures that the Court decides issues only as they arise

incident to an actual case or controversy. Id. at 342 (standing requirement enforces

Constitution's Article III case-or-controversy requirement); U.S. Const. art. III, § 2 ("The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority . . . .").

"The 'irreducible constitutional minimum' of Article III standing consists of three elements," Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)):

> First, the plaintiff must have suffered a "concrete," "particularized" injury-in-fact, which must be "actual or imminent, not conjectural or hypothetical." Second, that injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Third, the plaintiff must establish that a favorable decision likely would redress the injury.

Toll Bros., 555 F.3d at 137-38 (citations omitted) (quoting Lujan, 504 U.S. at 560).

Nittany bears the burden of establishing its standing with respect to each challenged provision of the Sign Ordinance, DaimlerChrysler, 547 U.S. at 342, 352 ("a plaintiff must demonstrate standing for each claim he seeks to press"), a burden that Nittany fails to carry with respect to its attack on the Ordinance's allegedly impermissible ban on off-premises signs.[6]

---

[6]Because the Sign Ordinance's provisions are, if possible, to be considered severable, see Coll. Twp. Code § 1-14 ("The provisions of this ordinance and of the Code adopted hereby are severable, and if any clause, sentence, subsection, section, article or part thereof shall be adjudged by any court of competent

_____

jurisdiction to be illegal, invalid or unconstitutional, such judgment or decision shall not affect, impair or invalidate the remainder thereof . . . ."); 1 Pa.C.S.A. § 1925 ("The provisions of every statute shall be severable."); City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 772 (1988) ("Severability of a local ordinance is a question of state law . . . ."), such that the invalidation of any one of the Ordinance's provisions applicable to Nittany leaves other applicable provisions in place, the Court should determine Nittany's standing provision-by-provision in order to avoid unnecessary constitutional adjudication, see Contractors Ass'n of E. Pennsylvania v. City of Philadelphia, 6 F.3d 990, 996 (3d Cir. 1993) ("Severing statutes to limit standing promotes the twin goals of avoiding unnecessary constitutional adjudication and sharpening the presentation of the issues.").

Relevant to the case at bar, one way in which provision-by-provision standing analysis may limit constitutional adjudication is by short-circuiting a challenge to a statutory provision where the injury that the plaintiff traces to that provision is not redressable because there are valid or unchallenged statutory provisions standing as additional obstacles to plaintiff's exercise of the rights he asserts. See Advantage Media, L.L.C. v. City of Eden Prairie, 456 F.3d 793, 801 (8th Cir. 2006) ("Because the code's provisions are properly considered severable, [plaintiff] must show injury, causation, and redressability with respect to each provision it challenges as overbroad."); Get Outdoors II, LLC v. City of San Diego, California, 506 F.3d 886, 893 (9th Cir. 2007) ("We note . . . that because standing is addressed on a claim by claim basis, an unfavorable decision on the merits of one claim may well defeat standing on another claim if it defeats the plaintiff's ability to seek redress.").

Nittany argues that the provisions of the Sign Ordinance that implement the allegedly unconstitutional ban on off-premises signs (i.e., Coll. Twp. Code §§ 170-7.I. & 170-8.A.(2)) are inseverable from the area and height restrictions on freestanding signs (id. §§ 170-8.B. & D.), the alternative grounds for denying Nittany's sign applications cited by the Zoning Officer. (See Pls.'s Perm. Inj. Reply Br., Apr. 1, 2013, ECF No. 35 at 12 (emphasis supplied by Nittany) ("[A]n examination of the Sign Ordinance as a whole reveals that the Township Council would not have adopted the freestanding sign regulations without the content restrictions.")). The Court rejects this argument infra in part because it relies on an untenable interpretation of the Ordinance (see Pls.'s Perm. Inj. Reply Br. at 11-13), and in part because it is the apparent intention of the Township to regulate the area and height of freestanding signs irrespective of content, and the Court sees no

15

Nittany fails to show that its injury – denial of a sign permit – would be redressed were the Court to agree with the contention that the Sign Ordinance's ban on off-premises signs violates the First Amendment and the Pennsylvania Constitution.

Assuming the Court saw fit to invalidate the provisions of the Sign Ordinance that implement the Township's ban on off-premises signs, Nittany's proposed signs still violate the Ordinance's area and height restrictions applicable to "freestanding sign[s]." That is, even if this Court were to hold that the Township is precluded from denying Nittany's sign permit application on the ground that

---

obstacles to realization of this intention. <u>See generally Saulsbury v. Bethlehem Steel Co.</u>, 413 Pa. 316, 196 A.2d 664, 667 (1964) (emphasis in original) ("In determining the severability of a statute or ordinance, the legislative intent is of primary significance. However, the problem is twofold: The legislating body must have intended that the act or ordinance be separable and the <u>statute or ordinance must be capable of separation in fact</u>."). <u>See also</u> Coll. Twp. Code § 170-2 (listing among purposes of the Code the Township's aspiration to "[p]rovide a safe, orderly and efficient means for the display of commercial, political and other informational advertisements within the Township," to "[e]stablish criteria for regulating the form or manner of display, and reduce visual clutter resulting from competition among signs," and to "[e]ncourage signs which are attractively designed in order to enhance the economic value as well as the visual character of the various parts of the community.").

Nittany's proposed signs are "off-premise,"[7] Nittany's proposed signs still measure 756 square feet when the maximum allowed area for double-faced freestanding signs is 64 square feet, Coll. Twp. Code § 170-8.B., and still measure 40 feet high when the maximum height allowed for freestanding signs is 15 feet, id. § 170-8.D. Either of these violations of the Sign Ordinance result in denial of Nittany's sign permit applications by the Zoning Officer.  53 Pa. Stat. § 10614 ("The zoning officer shall administer the zoning ordinance in accordance with its literal terms, and shall not have the power to permit any construction or any use or change of use which does not conform to the zoning ordinance.").

Thus, "even in victory" on its attack against the Sign Ordinance's ban on

---

[7]Two provisions of the Ordinance applied to Nittany's applications implement the Township's ban on off-premises signs: Coll. Twp. Code §§ 170-7.I. (prohibiting "[a]ll off-premises signs unless they are off-site directional signs") & 170.8.A.(2) ("All freestanding signs shall be located on the property for the object (business, residence, services, etc.) that they identify or advertise for").

Nittany argues that Coll. Twp. Code § 170-8.F.(1) also implements the Township's ban on off-premises signs because the provision commands that the Ordinance's "freestanding sign regulations only apply to signs bearing content that 'lists the individual tenants'" on the associated property. (Pls.'s Perm. Inj. Reply Br. at 7; id. at 10). This argument fails because, inter alia, it is grounded in an erroneous interpretation of Coll. Twp. Code § 170-8.F.(1), which states: "Freestanding signs located on nonresidential properties may be permitted to list the individual tenants." The provision's use of the word "may" denotes that a freestanding sign is allowed to list the property's individual tenants, not that it is required to do so. Thus, this provision does not restrict the content of freestanding signs.

off-premises signs, Nittany is "'no closer to erecting its billboards or obtaining damages than when litigation began." Advantage Media, L.L.C. v. City of Eden Prairie, 456 F.3d 793, 802 (8th Cir. 2006) (internal quotation marks omitted). See also Coastal Outdoor Adver. Grp., L.L.C. v. Twp. of Union, New Jersey, 402 F. App'x 690, 691 (3d Cir. 2010) ("We follow our sister circuits and conclude that the District Court correctly held that [plaintiff] did not demonstrate redressability because unchallenged restrictions, including those on the height and size of the signs, would prohibit their erection even if we were to invalidate the provision banning billboards"); Coastal Outdoor Adver. Grp., L.L.C. v. Twp. of E. Hanover, New Jersey, 397 F. App'x 794, 795 (3d Cir. 2010) ("[T]he district court correctly concluded that even if the Township's superseded prohibition on billboards were unconstitutional, [plaintiff] would not be substantially likely to erect the billboard because the unchallenged setback, use, and height restrictions would still prevent [plaintiff] from erecting its billboards"). Because it has not demonstrated redressability, Nittany lacks standing with respect to its challenges to the Sign Ordinance's ban on off-premises signs.

Nittany maintains that it has standing to challenge the Sign Ordinance's ban on off-premises signs because the Township's Zoning Officer improperly applied the Ordinance's restrictions on freestanding signs (area, height, etc.) to Nittany's

proposed signs. According to Nittany, "the freestanding sign regulations

<u>only</u> apply to signs bearing <u>on</u>-premise content," and Nittany's proposed signs will

bear <u>off</u>-premise content. (Pls.'s Perm. Inj. Reply Br. at 3 (emphasis supplied by

Nittany); <u>id.</u> at 6-7).[8] Accordingly, argues Nittany, should the Court strike down

the Ordinance's ban on off-premises signs, the Ordinance's restrictions on the area

and height of freestanding signs do not stand as obstacles to the Zoning Officer's

approval of Nittany's sign permit applications. (<u>Id.</u> at 6).

The Court disagrees. The Sign Ordinance defines a "freestanding sign" as

"[a] sign that is not attached to a building and which is supported permanently

upon the ground by poles, pedestals or braces." Coll Twp. Code § 170-4. Once a

sign meets this description – and Nittany does not argue that its proposed signs are

otherwise – the sign is a "freestanding sign" subject to the provisions of the

Ordinance that govern freestanding signs. True, one of the regulations

distinguishing a <u>permissible</u> freestanding sign from an impermissible one is the

---

[8]Note that the Court proceeds to review the merits of this contention. That is
to say, even though the Court holds that Nittany's position is unmeritorious,
Nittany has standing to raise unmeritorious challenges to the Sign Ordinance's
restrictions on freestanding signs. "A plaintiff's standing to bring a case does not
depend upon his ultimate success on the merits underlying his case." <u>Covenant
Media of South Carolina, LLC v. City of N. Charleston</u>, 493 F.3d 421, 429 (4th
Cir. 2007). In contrast, once the Court rejects Nittany's challenges to the
restrictions on freestanding signs, Nittany's attacks on the Ordinance's ban on off-
premises signs are not redressable, even assuming those attacks <u>are</u> meritorious.

requirement that "[a]ll freestanding signs shall be located on the property for the object (business, residence, services, etc.) that they identify or advertise for," Coll. Twp. Code § 170-8.A.(2), but a proposed freestanding sign's failure to adhere to this restriction on location does not take the sign out from under the <u>definition</u> of "freestanding sign," it simply means the sign is not allowed in the Township. Were the Court to hold that § 170-8.A.(2) (a provision that implements the Ordinance's ban on off-premises signs) should be severed from the Ordinance because that provision violates the First Amendment, <u>see</u> n.6 <u>supra</u>, Nittany's proposed signs would still fit the definition of "freestanding signs," and the Ordinance's other restrictions on freestanding signs – including the area and height limitations – would remain in place, blocking Nittany from permit approval.

Nittany protests that, if declared unconstitutional, § 170-8.A.(2) should not be severed from the regulations on freestanding signs (rather, argues Nittany, the regulations on freestanding signs should be voided <u>in toto</u>) because the provision is integral to the Ordinance's definition of "freestanding sign," limiting such signs to those bearing on-premise content, and because "the Township Council would <u>not</u> have adopted the freestanding sign regulations without the content restrictions." (<u>See</u> Pls.'s Perm. Inj. Reply Br. at 11-13 (emphasis in original); Pls.'s Summ. J. Reply Br., Apr. 29, 2013, ECF No. 45 at 10 ("[W]ithout the substantive

regulations, the definition [of freestanding signs] is meaningless . . ..")). Nittany's reasoning is not entirely without force, but the Court reads the Ordinance differently.

The freestanding sign regulations, Coll. Twp. Code § 170-8, are found in Article III of the Ordinance, entitled "Ground Sign Type Regulations." Other ground sign types regulated in Article III are "off-site directional signs," "on-site directional signs," and "drive-through menu boards,"[9] each of which is defined in the Ordinance's "Definitions" section,  § 170-4., with reference to sign content,[10] and each of which is subject to specific restrictions (e.g., location, height) under Article III. In contrast, a "freestanding sign" is defined in § 170-4. solely with reference to its physical characteristics; reference to content is conspicuously absent.

---

[9]Article III also provides that "[b]alloons, hot-air balloons or other inflatable objects are allowed only as temporary signs," id. § 170-9, and that "[a]ll ground sign types contained within Article III shall be permitted to contain an electronic or digital sign face [in accordance with] additional regulations," id. § 170-11.2.

[10]An "off-site directional sign" is defined as "[a] sign located off site and along an arterial street and listing the names of one or more business establishments with distance information designed to direct vehicular traffic." An "on-site directional sign" is defined as "[a]ny sign on the property which includes information aiding in the flow of vehicular and/or pedestrian traffic." A "drive-through menu board" is defined as "[a] freestanding sign located adjacent to a drive-through lane which details the sale of products or services available on the property and which is not intended to be seen from roadways or parking lots."

Coupling § 170-4.'s definitions with the structure of Article III, the Court infers that the Ordinance's freestanding sign regulations are intended to function as a catch-all for ground type signs featuring <u>any</u> content not specifically regulated under Article III. Were the Court to read § 170-8.A.(2) into the definition of "freestanding sign," the intention revealed by the Ordinance's deliberate structure – <u>i.e.</u>, to define "freestanding signs" without reference to content and thus regulate ground signs comprehensively – would be undermined.

Accordingly, neither the Ordinance's definition of "freestanding sign," nor the apparent intentions of the Ordinance's drafters counsels against allowing the restrictions on freestanding signs to remain intact absent § 170-8.A.(2). <u>See also</u> Coll. Twp. Code § 1-14 ("The provisions of this ordinance and of the Code adopted hereby are severable, and if any clause, sentence, subsection, section, article or part thereof shall be adjudged by any court of competent jurisdiction to be illegal, invalid or unconstitutional, such judgment or decision shall not affect, impair or invalidate the remainder thereof . . . ."). Nittany's contrary contention – that, had it recognized that billboards could not, consistent with the First Amendment, be completely prohibited, the Township would not have placed any restrictions whatsoever on billboards – is counterintuitive, totally without foundation, and in tension with the Sign Ordinance's apparent intention to

22

comprehensively restrict the area and height (among other characteristics) of signs in the Township irrespective of content.[11]

Accordingly, the Ordinance's restrictions on the area and height of freestanding signs stand as obstacles to Nittany obtaining a sign permit; render Nittany's attacks on the Sign Ordinance's ban on off-premises signs unredressable; and deprive Nittany of standing to challenge the ban in this Court.[12] In reaching

---

[11]Whether the Ordinance's limitations on the area and height of freestanding signs are permissible <u>content-neutral</u> restrictions is a question Nittany does not raise, and the Court does not consider it. Nittany's challenge is, rather, limited to the contention that the Ordinance's restrictions on freestanding signs are part and parcel of the allegedly <u>content-based</u> ban on off-premises signs. Indeed, Nittany's amended complaint never mentions the possibility that the provisions challenged could be considered "content-neutral," and in briefing Nittany concedes that "local government[s] can permissibly establish objective [<u>i.e.</u>, content-neutral] size and height regulations for signs." (Pls.'s Summ. J. Reply Br. at 10 n.3). With its contention that the Sign Ordinance's area and height restrictions are not, in Nittany's words, "objective" rejected, Nittany is presumed to view the restrictions as "permissible" content-neutral regulations.

[12]Since "[s]tanding is determined by the facts that exist at the time the complaint is filed," <u>Clark v. City of Lakewood</u>, 259 F.3d 996, 1006 (9th Cir. 2001), and this Court's decision on the merits of one aspect of Nittany's claim renders another aspect (Nittany's challenges to the Ordinance's ban on off-premise signs) unredressable, it may be more accurate to say that Nittany's challenges to the Ordinance's  ban on off-premise signs have been rendered moot, <u>see</u> 15 <u>Moore's Federal Practice</u>, § 101.90 (Matthew Bender 3d ed.) ("[T]he mooting of a case can occur in one of two ways. It may occur because the legal issue in dispute is no longer amenable to review and judicial relief would serve no purpose, or it may occur because a party no longer has a personal stake in the controversy and has, in essence, been divested of standing.").

this holding, this Court's path is guided by the United States Court of Appeals for the Ninth Circuit, which reasoned thusly in Get Outdoors II, LLC v. City of San Diego, California:

> [O]ur ability to grant relief in this case hinged on the possibility that we would invalidate both the off-site sign ban and the size and height restrictions. We have now decided this latter set of restrictions is constitutional, and validly prohibits the construction of the proposed billboards. Therefore, even a decision enjoining the off-site ban would not redress the injury [plaintiff] suffered due to the denial of its permits.

506 F.3d 886, 894 (9th Cir. 2007). Here, as in Get Outdoors II, the plaintiffs's attacks on the Ordinance's ban on off-premises signs fail for lack of standing to pursue them.[13]

**(b)    Nittany's substantive challenges to the Township's amended Sign Ordinance fail on the merits.**

In August 2012, the Township amended its Sign Ordinance with the stated intention of allowing "off-premise advertising through the placement of billboards within College Township" while "also providing protection to residents and

---

[13]Although the Court exercises "arising under" jurisdiction over one of Nittany's claims, see infra, this does not allow the Court to exercise supplemental jurisdiction over state law claims for which Nittany lacks standing. DaimlerChrysler Corp., 547 U.S. at 351-52 ("What we have never done is apply the rationale of Gibbs to permit a federal court to exercise supplemental jurisdiction over a claim that does not itself satisfy those elements of the Article III inquiry . . .. ")

motorists viewing the billboards." (Pls.'s Ex. E, Mar. 1, 2013, ECF No. 27-5). The amendment, <u>inter alia</u>, eliminated the Township's prohibition on off-premises signs.  In place of the ban, the amendment added "billboards" to the existing list of permissible ground signs defined by content (a list already including off-site directional signs, on-site directional signs, and drive-through menu boards), and placed restrictions on billboard location, area, number, height, setback, and lighting. (<u>Id.</u>).

Nittany was not completely assuaged. Although it apparently withdraws any allegation that the Township's amended Ordinance violates the Pennsylvania Constitution (<u>see</u> Pls.'s Perm. Inj. Supp. Br. at 7-10 (citing no Pennsylvania caselaw)), Nittany maintains that "the Township Sign Ordinance (even after the Amendment) is content-based because it distinguishes between signs based on their subject matter." (<u>Id.</u> at 7). "[B]illboards (including nearly all signs with noncommercial messages) continue to be treated less favorably than signs bearing commercial on-premise content." (<u>Id.</u> at 6). Therefore, according to Nittany, "[a]s a content-based scheme that favors commercial speech over noncommercial speech, the Township's regulations must be subjected to strict scrutiny, a standard the Township cannot possibly meet," and ultimately declared unconstitutional for violating the First Amendment. (<u>Id.</u> at 9).

25

Nittany's argument fails because its premise – that the amended Ordinance's regulation of billboards (i.e., off-premises signs, Coll. Twp. Code § 170-4) and freestanding signs (i.e., on-premises signs, id. § 170-8.A.(2)) is content-based and favors noncommercial over commercial speech – is faulty.

The Third Circuit in Rappa v. New Castle Cnty. reasoned that differential treatment of on-premises and off-premises signs "is not a content-based" distinction:

> Although evaluating whether a sign is an onsite sign does require the state to analyze the content of the sign, the onsite exception does not preclude any particular message from being voiced in any place; it merely establishes the appropriate relationship between the location and the use of an outdoor sign to convey a particular message.

18 F.3d 1043, 1067 (1994). Accordingly, Nittany errs when it argues that the Township's regulation of on- and off-premises signs constitutes content-based regulation.

Nevertheless, Nittany's briefs decry the amended Ordinance's impact on noncommercial speech, asserting that "[u]nder the Ordinance, a retail store sign may say 'Outdoor Outfitters' but cannot say 'Support the Audubon Society'; indeed, signs cannot [sic] not urge support for any non-profit or religious charity unless [the sign] meets the specialized location, spacing, and permitting requirements set forth" for billboards. (Pls.'s Perm. Inj. Supp. Br. at 8).

This argument is factually incomplete and legally inapposite under <u>Rappa</u>. Factually incomplete because the argument neglects to mention that, were the offices of the Audubon Society operating in place of the retail store, the Audubon Society would be allowed to advertise for itself and prohibited from using a freestanding sign to advertise for Outdoor Outfitters. What's more, now that the amended Ordinance allows billboards, the Audubon Society (or, for that matter, Outdoor Outfitters to the extent it supports the Audubon Society) can advertise throughout the Township regardless of the location of its offices. As a matter of legal doctrine, under <u>Rappa</u>, even the natural result of a complete ban on off-premises signs – <u>i.e.</u>, noncommercial content is limited by the number of noncommercial establishments residing in the community, which may be fewer than the number of commercial establishments and messages – does not trigger the strict scrutiny analysis applied to content-based regulations. <u>Rappa</u>, 18 F.3d at 1067. <u>A fortiori</u>, regulations that – like the Township's amended Ordinance – allow for the posting of billboards are not subject to strict scrutiny.

Finally, whether the amended Ordinance's provisions regulating billboards and freestanding signs are permissible <u>content-neutral</u> restrictions is a question Nittany does not raise, and the Court does not consider it.

To summarize subsections IV(a) and IV(b) of this memorandum, the Court

will deny Nittany's motions for summary judgment and for permanent injunctive relief insofar as the motions rely on the assertion that the Township's regulation of off-premises signs (billboards) violated Nittany's rights under the First Amendment and the Pennsylvania Constitution.

**(c)    Nittany has standing to attack the Township's Sign Ordinance on the ground that the Ordinance vests Township officials with unbridled discretion.**

Nittany asserts that the Sign Ordinance[14] invests Township officials with the power to award or deny sign permits to applicants without necessary limits on the officials's discretion. (Am. Compl. ¶ 23). The sources of officials's "unfettered discretion" are, according to Nittany, multiple.

First, Nittany asserts that the Ordinance requires a person to obtain a permit before posting a sign in the Township, but does not require the Township to issue a permit even when an applicant's sign complies with the Ordinance. (Id. (citing Coll. Twp. Code §§ 170-3, 170-19 & 170-20)). Second, Township officials are empowered to prohibit "[s]igns which obstruct the vision of drivers or obstruct or detract from the visibility or effectiveness of any traffic sign or control device on

---

[14]Hereinafter, reference to a provision in the "Sign Ordinance" implies that the provision is present in both the pre-amendment Ordinance and the amended Ordinance.

28

public streets and roads," but this standard, Nittany asserts, lacks "objective criteria" to guide in its application. (Am. Compl. ¶ 23 (citing Coll. Twp. Code § 170-7.D.)). Third, Nittany asserts that the Ordinance does not set forth criteria to guide Township officials in their decision to grant a variance for proposed signs that do not comply with the terms of the Ordinance. (Am. Compl. ¶ 23 (citing Coll. Twp. Code § 170-27)). Fourth, Nittany asserts that the Sign Ordinance fails to specify a limitation on the time within which the Township will grant or deny a sign permit application. (Pls.'s Prelim. Inj. Br. at 5). Fifth, Nittany asserts that the post-amendment Sign Ordinance empowers the Township to withhold a permit from an applicant for an off-premises sign until the applicant submits "any additional information requested" by the Zoning Officer. (Id. at 12 (citing Coll. Twp. Code § 170-11.3.G.)).

For the reasons set forth infra, Nittany has standing to mount a facial challenge to the Ordinance on the grounds that the Ordinance invests Township officials with unbridled discretion.

## 1.    Prudential Standing

Because "the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court," the Supreme Court of the United States has "established that in the area of freedom of expression an

overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable," Forsyth Cnty., Georgia v. Nationalist Movement, 505 U.S. 123, 129 (1992), a relaxation of the "prudential requirement that a litigant raise [solely] his own rights and interests." Serv. Emp. Int'l Union, Local 3 v. Municipality of Mt. Lebanon, 446 F.3d 419, 423 (3d Cir. 2006).

So-called "overbreadth" challenges come in a variety of flavors. Relevant here, "the [Supreme] Court has permitted a party to challenge an ordinance under the overbreadth doctrine in cases where every application creates an impermissible risk of suppression of ideas, such as an ordinance that delegates overly broad discretion to the decisionmaker . . .." Forsyth Cnty, 505 U.S. at 129. "[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 755-56 (1988). "At the root of this long line of precedent is the time-tested knowledge that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship" and self-censorship. Id. at 757. Standardless statutes also

30

deprive the courts of the "guideposts" that "allow [them] quickly and easily to determine whether the licensor is discriminating against disfavored speech," encouraging "post hoc rationaliz[ing] by the licensing official and the use of shifting or illegitimate criteria." Id. at 758. Thus, because the overbreadth doctrine relaxes the prudential standing bar, Nittany has standing to challenge the Sign Ordinance on its face even though Nittany would be hard pressed to argue that the Township abused its discretion in processing Nittany's sign permit applications.

## 2.   Article III Standing

Although overbreadth doctrine gets Nittany over the prudential standing hurdle, as a litigant raising an overbreadth challenge, it "must still meet the constitutional requirement of injury-in-fact" – i.e., Article III  standing – with respect to its claims.  Mt. Lebanon, 446 F.3d at 423. Seeking precedential guidance, this Court has unfortunately discovered that, faced with situations analogous to that presented by the case at bar, courts have not been completely consistent in deciding the Article III standing issue.

City of Lakewood instructs that standing is granted to "'one who is subject to,'" or imminently will be subject to, the provisions" of a statute that, because the provisions allegedly vest licensing officials with unbridled discretion, "'pose a real and substantial threat of . . . censorship risks.'" CAMP Legal Def. Fund, Inc. v.

31

City of Atlanta, 451 F.3d 1257, 1274 (11th Cir. 2006) (quoting City of Lakewood, 486 U.S. at 755, 758)). Nittany clearly meets this requirement – it applied for five permits – and since "it is the existence, not the imposition, of standardless requirements that causes . . . injury," CAMP, 451 F.3d at 1275, it would appear that Nittany has standing despite the denial of its permit applications on grounds that did not bring the discretion of Township officials into play.

Yet in Get Outdoors II, having determined that the plaintiff's proposed billboards were prohibited by constitutionally valid size and height provisions in San Diego's sign ordinance, the Ninth Circuit held that the plaintiff lacked standing to challenge the ordinance for allegedly vesting unbridled discretion in licensing officials. 506 F.3d at 894-95. On the "injury-in-fact" prong of Article III standing, the Ninth Circuit explained that "[p]rior restraint claims are unique . . . because the threat of the prior restraint itself constitutes the injury-in-fact." Id. at 895. Thus, as the Ninth Circuit acknowledged, even a plaintiff who chooses to not apply for a license or permit has standing to challenge the permitting scheme on the grounds that is constitutes an unconstitutional prior restraint. Id. See also Shuttlesworth v. City of Birmingham, Alabama, 394 U.S. 147, 151 (1969) ("The Constitution can hardly be thought to deny to one subjected to the restraints of such an ordinance the right to attack its constitutionality, because he has not

yielded to its demands." (quoting <u>Jones v. City of Opelika</u>, 316 U.S. 584, 602

(1942) (Stone, C.J., dissenting), adopted <u>per curiam</u> on rehearing, 319 U.S. 103)).

Counterintuitively, the Ninth Circuit nevertheless held that the plaintiff –

who had applied for and been denied multiple billboard permits – failed to

establish injury-in-fact. The circuit court reasoned:

> [Plaintiff's] applications to erect billboard structures were denied on
> grounds that are constitutionally valid, and neither its filings nor its
> actions in this case have evinced any intent to file permit applications
> that comply with these requirements. Thus, [plaintiff] cannot show that
> it would <u>ever</u> be genuinely threatened by an unconstitutional prior
> restraint in this case.

<u>Get Outdoors II</u>, 506 F.3d at 895 (emphasis in original). In short, the Ninth Circuit

held that a licensor's unbridled discretion poses a genuine threat to a plaintiff only

when the plaintiff's application fully complies with those aspects of the licensing

scheme that admit of no discretion.

In contrast, the United States Court of Appeals for the Sixth Circuit in <u>Prime</u>

<u>Media, Inc. v. City of Brentwood</u> strongly indicated that it would hold that a

plaintiff has standing to challenge a sign ordinance on the ground that the

ordinance vests unbridled discretion in licensing officials, although the plaintiff's

proposed billboards failed to comply with the ordinance's size and height

limitations, which had already been deemed constitutional. 485 F.3d 343, 351 (6th

Cir. 2007). Having already concluded that the City's valid limitations on sign size

and height guaranteed denial of plaintiff's billboard applications, the Sixth Circuit

reasoned that "the prior restraint of a licensing provision coupled with unbridled

discretion itself amounts to an actual injury" regardless, apparently, of the null

prospect for approval of the plaintiff's sign applications.[15] Prime Media, 485 F.3d

at 351. The circuit court ultimately concluded, however, that the plaintiff had

improperly characterized the City's regime as a prior restraint. Id. at 352.

Likewise, in Covenant Media of South Carolina, LLC v. City of N.

Charleston, another billboard case, the United States Court of Appeals for the

Fourth Circuit rejected the City's argument that the plaintiff "[did] not have

standing to assert a claim for the untimely processing of its December 2004

Application because that application would have been denied – regardless of how

_____

[15]The very same year, however, in Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio, the Sixth Circuit dismissed for lack of standing all of a sign company's challenges to a billboard ordinance – including the company's claim that the ordinance lacked adequate procedural safeguards (i.e., gave licensors unbridled discretion) – because the company's proposed billboards violated the ordinance's size and height restrictions and the company did not raise a constitutional challenge to those restrictions. 503 F.3d 456, 460-63 (6th Cir. 2007). Mysteriously concluding that the ordinance's procedural provisions were severable from the size and height provisions, and failing to acknowledge the distinct nature of the injury caused by prior restraints, the Symmes panel provided no specific explanation for its holding in this regard. Four judges of the Sixth Circuit dissented from denial of rehearing en banc. 512 F.3d 338, 340 (6th Cir. 2008) (Clay, J., dissenting from denial of rehearing en banc) ("Assuming [plaintiff's] allegations are true, the challenged regulations therefore constitute an unconstitutional prior restraint.").

long it took – for failing to comply with the Sign Regulation's spacing requirement." 493 F.3d 421, 428 (4th Cir. 2007). The Fourth Circuit rejoined that "the injury of not having an application processed timely is distinct from the injury of ultimate denial of that application." Covenant Media, 493 F.3d at 428. The circuit court continued, "just because a decisionmaker has a valid, constitutional basis for denying an application for a permit does not allow him to refuse to act on the application. The City cannot indefinitely delay consideration of an application simply because it knows that it has an ace in the hole – that the application would ultimately fail a valid requirement." Id. at 428-29.

As to the case at bar, this Court concludes that Nittany has satisfied the injury-in-fact requirement despite the existence of valid provisions in the Township's Sign Ordinance that prevent Nittany from erecting its signs. At least in the context of this case, the Ninth Circuit's contrary approach in Get Outdoors II seems misguided. As the Fourth Circuit recognized in Covenant Media, even an applicant whose proposed sign may be validly prohibited is threatened when he is not assured of a timely denial, if for no other reason than that his opportunity to learn of and cure his noncompliance (or seek alternative channels for communication) may be delayed.

In addition, from the perspective of Nittany, who apparently believed that it

was not properly subject to the restrictions in the Ordinance that resulted in denial

of its applications,[16] the only "genuine threat" (to use the Ninth Circuit's

terminology) posed by the Sign Ordinance at the time Nittany sought a permit was

the unbridled discretion vested in Township officials. Thus, at the time it

contemplated seeking a sign permit (and even now, assuming what is likely – that

Nittany disagrees with this Court's holdings supra and will appeal), Nittany was in

precisely the same position as any prospective applicant facing a prior restraint,

and there is no question that potential applicants have standing to challenge a prior

restraint for vesting unbridled discretion in licensors, apparently without inquiry

into whether the potential applicant, were he to actually apply, would be granted a

permit or license but for the licensor's unbridled discretion. See, e.g., City of

Lakewood, 486 U.S. at 754 (plaintiff-publisher had standing although it "elected

not to seek a permit"). Moreover, as the Court determines below, the aspects of the

Ordinance that vest unbridled discretion in Township officials are inseverable from

the permit requirement in toto, meaning that victory on this strand of Nittany's

claims dooms the permit requirement in its entirety, giving Nittany an obvious

_____

[16]In Get Outdoors II, the Ninth Circuit seems to have assumed that the
plaintiff, contemplating a sign permit application, knew that its (the plaintiff's)
application would be denied for failure to comply with constitutional height and
size restrictions.

stake in the outcome.[17]

Finally, Nittany challenges the Township's criteria for granting variances,

criteria that come into play only when an applicant's signs fail to comply with the

Sign Ordinance. To say that Nittany lacks standing because "neither its filings nor

its actions . . . have evinced any intent to file permit applications that comply with

[the sign ordinance's constitutionally valid provisions]," Get Outdoors II, 506 F.3d

at 895, makes no sense when variance criteria are at issue.

Accordingly, the Court holds that Nittany has Article III standing to

challenge the Ordinance's alleged grant of unbridled discretion to Township

officials.

**(d)    The Sign Ordinance vests unbridled discretion in Township officials.**

Turning to the merits, prior restraints must contain "'narrow, objective, and

definite standards to guide the licensing authority'" in order to be constitutional.

Forsyth Cnty., 505 U.S. at 131 (quoting Shuttlesworth v. Birmingham, 394 U.S.

_____

[17]The Court also notes that, taken to its logical conclusion, the Ninth
Circuit's approach in Get Outdoors II implies "that a party who has been granted a
permit has not suffered any injury," and the Ninth Circuit has so held. Hunt v. City
of Los Angeles, 638 F.3d 703, 718 (9th Cir. 2011). This holding, however, runs
contrary to Third Circuit precedent: "Although the [event for which plaintiffs
sought a permit] went forward as planned, the Supreme Court has long held that
statutes which threaten to chill First Amendment speech may be facially challenged
without the necessity of the speaker being denied, or even having applied for, a
permit." Nationalist Movement v. City of York, 481 F.3d 178, 182 (3d Cir. 2007).

147, 150-51 (1969)). Where "[n]othing in the law or its application prevents the

[licensing] official from encouraging some views and discouraging others," the

"First Amendment prohibits the vesting of such unbridled discretion in a

government official." Forsyth Cnty., 505 U.S. at 133. One "species of unbridled

discretion" that renders a prior restraint[18] unconstitutional is a lack of time limits

on processing applications: "[A] prior restraint that fails to place limits on the time

within which the decisionmaker must issue the license is impermissible." FW/PBS,

_____

[18]There is some authority for the proposition that a content-neutral restraint can omit time limitations and be constitutional, see, e.g., Covenant Media, 493 F.3d at 435 ("Because the Sign Regulation was content neutral, it did not need time limitations on decisionmaking to be constitutional."), and the Township asserts that its Sign Ordinance is content-neutral. (Def.'s Summ. J. Opp'n Br., Apr. 10, 2013, ECF No. 44 at 18). The Court does not find Covenant Media and similar decisions persuasive on this issue, however, because "[e]ven . . . facially content-neutral provisions," are unconstitutional when they invite arbitrary application. Riel v. City of Bradford, 485 F.3d 736, 755 (3d Cir. 2007)). Accordingly, assuming arguendo that the content-based distinctions in the Township's Sign Ordinance, see Coll. Twp Code §§ 170-6 & 170-7, would pass the novel (and apparently unique, see Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1262 n.11 (11th Cir. 2005) ("Only the Third Circuit has taken a different approach.")) test under which the Third Circuit carves out "context-sensitive" content-based distinctions from the strict scrutiny analysis generally applied to content-based laws, see Rappa v. New Castle Cnty., 18 F.3d 1043, 1064-65 (3d Cir. 1994), the Ordinance would still be subject to invalidation for vesting too much discretion in Township officials. See Riel, 485 F.3d at 753-57 (concluding "that none of the challenged provisions . . . constitute an impermissible content-based regulation under the First Amendment" and proceeding to measure ordinance against the FW/PBS standard, ultimately holding that Bradford's "time periods [did] not rise to the level of those that offend the First Amendment").

Inc. v. City of Dallas, 493 U.S. 215, 223, 226 (1990).[19]

As for Nittany's first contention – that the Sign Ordinance improperly requires a person to obtain a permit before posting a sign in the Township, but does not require the Township to issue a permit even when an applicant's sign complies with the Ordinance – the Court disagrees. The Ordinance provides that "[t]he Zoning Officer . . . shall examine all applications for permits for the erection of signs and issue licenses for new signs and for continued use of signs which conform to the requirements of this [Ordinance]." Coll. Twp. Code § 170-24. Inartfully drafted as it is, this provision is readily susceptible to a construction requiring the Township to issues permits and licenses where an applicant's proposed sign complies with the Ordinance. See Conchatta Inc. v. Miller, 458 F.3d 258, 263 (3d Cir. 2006) ("If a statute is 'readily susceptible' to a limiting interpretation that would make it constitutional, the statute must be upheld, but 'we will not rewrite a state law to conform it to constitutional requirements.'" (quoting Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 397 (1988))). This Court adopts that construction, averting Nittany's challenge.

Next, Township officials are empowered to prohibit "[s]igns which obstruct

---

[19]FW/PBS was, in part, a plurality opinion, but a majority of justices agreed on this point.

the vision of drivers or obstruct or detract from the visibility or effectiveness of any traffic sign or control device on public streets and roads," Coll. Twp. Code § 170-7.D.; this standard, Nittany asserts, lacks "objective criteria" to guide its application. Again, the Court disagrees. Even assuming some range of reasonable disagreement over what "obstructs" visibility or "detracts" from the "effectiveness" of traffic control devices, the range seems small enough that this prohibition is highly unlikely to provide cover for content discrimination by Township officials.

Moreover, the Third Circuit in <u>Riel v. City of Bradford</u> held that a provision did not vest unbridled discretion in city officials when it allowed them to prohibit signs for lack of "conformity" with the "exterior material composition, exterior structural design, external appearance and size of similar advertising or information media used in the architectural period of the district in accordance with the Resource Inventory of building architectural styles of the Bradford Historic District." 485 F.3d 736, 755 (3d Cir. 2007). Nittany would be hard pressed to argue that the provision it challenges gives Township officials more discretion than Bradford city officials had in assessing architectural "conformity" under the provision held constitutional in <u>Riel</u>. <u>See generally Thomas v. Chicago Park Dist.</u>, 534 U.S. 316, 325 (2002) (courts should not "insist[] upon a degree of rigidity that

is found in few legal arrangements"). Accordingly, Nittany's challenge to  Coll.
Twp. Code § 170-7.D. is rejected.

Nittany's next three challenges are significantly more substantial. Nittany
asserts that the Sign Ordinance fails to specify a limitation on the time within
which the Township will grant or deny a sign permit application. In addition, the
amended Sign Ordinance empowers the Township to withhold a permit from an
applicant for an off-premises sign until the applicant submits "any additional
information requested" by the Zoning Officer. Finally, Nittany asserts, the
Ordinance does not set forth criteria to guide Township officials in their decision to
grant a variance for proposed signs that do not comply with the terms of the
Ordinance.

Assuming Nittany is right, these alleged deficiencies, especially in
combination, would fail to confine the discretion of Township officials. Indeed,
"[t]he absence of any decisionmaking deadline"  – as well as the Zoning Officer's
power to hold a permit hostage for ransom in the form of "any additional
information" that he requests – "effectively vests . . . officials with unbridled
discretion to pick and choose which signs may be displayed by enabling them to
pocket veto the permit applications for those bearing disfavored messages."
Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1272 (11th Cir. 2005).

41

The absence of any standards for granting a variance from the Sign Ordinance allows similar picking and choosing. "The sign code's permitting requirement is therefore precisely the type of prior restraint on speech that the First Amendment will not bear." Id. See also Am. Target Adver., Inc. v. Giani, 199 F.3d 1241, 1251 (10th Cir. 2000) (catch-all provision allowing licensor to request "any additional information" unconstitutional; "this catch-all provision confers unbridled discretion upon the director: she may demand any piece of information from an applicant and lawfully deny a permit if the applicant refuses such request"); Pennsylvania Pride, Inc. v. Southampton Twp., 78 F. Supp. 2d 359, (M.D. Pa. 1999) (Munley, J.) (prior restraint on adult entertainment businesses unconstitutional because "the procedural safeguard of having the license issue or be denied within a short time is not provided by the ordinance").

The Township weakly answers with two arguments. First, the Township asserts that its Zoning Officer processes sign permit applications under Coll. Twp. Code § 200-49.B., which states, "All applications for zoning permits shall be granted or denied by the Zoning Officer within 30 days from the date of receipt of a full and complete application." (Def.'s Perm. Inj. Opp'n Br., Mar. 14, 2013, ECF No. 31 at 12).

Frustratingly, the Township is unclear on the precise conclusion it hopes the

Court will draw as to § 200-49.B. On the one hand, in an affidavit submitted with the Township's briefs, Township Zoning Officer John Franek, Jr., claims that he is "bound" to follow § 200-49.B. (Mar. 14, 2013, ECF No. 31-1). Likewise, another affiant for the Township, Mark Holdren, claims that a sign permit is "synonymous" with a zoning permit. (Mar. 14, 2013, ECF No. 31-1). Following Holdren's logic, § 200-49.B.'s reference to "applications for zoning permits" subsumes applications for sign permits and binds the Zoning Officer to process sign permit applications in 30 days or less.

In contrast, the Township's briefs are more timid. In its brief opposing summary judgment, the Township enigmatically asserts that there is an "interrelationship [that] is not fictitious" between chapters 170 (which covers Signs) and 200 (which covers Zoning and includes § 200-49.B.) of the College Township Code (Def.'s Summ. J. Opp'n Br. at 23), but how the chapters interrelate is a secret well-kept from the Court, which leaves the Court to wonder if the Township is not peddling fiction after all. Tellingly, in its brief opposing a permanent injunction, the Township argues that, "[a]s stated in the Affidavit of John Franek, Jr., . . . the Zoning Officer is to process zoning permits pursuant to College Township Code § 200-49.B." (Def.'s Perm. Inj. Opp'n Br. at 12 (emphasis added)), downplaying Franek's precise claim, which is that he is "bound" to

43

process applications in accordance with § 200-49.B.[20]

To the extent the Township is asserting that its Code requires sign permit applications to be processed under § 200-49.B., the Court disagrees. The Court sees nothing in the Code to link chapter 170 (Signs) with chapter 200 (Zoning) or the latter chapter's § 200-49.B. (Zoning Permits), or to make the term "zoning permit" inclusive of sign permits. Indeed, chapter 200 includes a section 200-39 (Signs), which instructs, "All regulations governing signs in the Township are stipulated in Chapter 170, Signs, known as the 'Sign Ordinance of College Township.'" (emphasis added). Moreover, chapter 170 of the Code explicitly provides that "[t]he procedure for granting variances [for signs] shall be those set forth in Chapter 200, Zoning." That chapter 170 does not include a parallel provision on the procedures for reviewing sign permit applications implies, expressio unius est exclusio alterius, that the Ordinance drafters did not intend the processing of sign permit applications to be governed by chapter 200, or more specifically, § 200-49.B.

_____

[20]The Township's brief opposing summary judgment also states: "[I]n the 'Zoning Permit Application Process' sheet, the general information advises that the permit will be approved or denied within thirty (30) days." (Def.'s Summ. J. Opp'n Br. at 23). But the brief does not say that this sheet was given to Nittany, and nothing on the sheet indicates that it applies to sign permit applications. Rather, as its title would suggest, the sheet appears to relate to the zoning permit application process.

On the other hand, to the extent the Township is asserting that in practice the Zoning Officer follows § 200-49.B. with respect to sign permit applications, even if he is not textually "bound" to do so, this point is ineffectual. True, even where a law as written fails to sufficiently confine officials's discretion, if the law "has been authoritatively construed so as to render it constitutional, or a well-understood and uniformly applied practice has developed that has virtually the force of a judicial construction, [then] the state law is read in light of those limits." City of Lakewood, 486 U.S. at 770 n.11. At a minimum, however, to establish that a practice is "well-understood and uniformly applied" such that the practice has attained "virtually the force of a judicial construction," a "[m]unicipalit[y] generally must demonstrate a pattern of behavior from which a plausible interpretation of a law may reasonably be inferred." Wil-Kar, Inc. v. Vill. of Germantown, 153 F. Supp. 2d 982, 994 (E.D. Wis. 2001). Thus where, for example, an individual with long experience in the relevant licensing office represents that, from the last decade, she cannot recall a single instance of a complete application taking longer than 24 hours to process, the relevant "ordinance, therefore, is fairly susceptible to being read with consideration of such a [time] limit." United Youth Careers, Inc. v. City of Ames, Iowa, 412 F. Supp. 2d 994, 1005-06 (S.D. Iowa 2006).

45

In the case at bar, the Township's evidence falls short. The affidavits of John Franek, Jr. and Mark Holdren fail to set forth any abiding habit of the Township with respect to the timely processing of sign permit applications. (They also fail to set forth any foundation of personal knowledge from which the affiants could testify to the Township's policies over time.).  And as to the Code's provision empowering the Zoning Officer to request "any additional information" from certain applicants, a provision that came into effect in August 2012, the Township had little opportunity to establish a pattern of conduct prior to Nittany's motions. Accordingly, the Township's evidence does not substantiate that there is a genuine issue of material fact with respect to the susceptibility of the Township's Sign Ordinance to a narrowing construction arising from the Township's past practice of processing sign permit applications.[21]

---

[21]At least to this Court, the relevant precedents offer conflicting guidance on when to give a statute a narrowing construction. In Virginia v. Am. Booksellers Ass'n, Inc., the United States Supreme Court instructed that a law should be given a narrowing construction where the law is "'readily susceptible'" to a denotation that would make it constitutional, but cautioned that "[t]he key to application of this principle is that the statute must be 'readily susceptible' to the limitation; we will not rewrite a state law to conform it to constitutional requirements." 484 U.S. 383, 397 (1988). But "even [where] the face of the statute might not otherwise suggest . . . limits," City of Lakewood, 486 U.S. at 770 n.11 – i.e., even where the law is not "readily susceptible" to a narrowing construction – a court may obtain a narrowing construction from an "authoritative construction[]" of the law by its administrator, which may be drawn from the administrator's "own implementation and interpretation" of the law. Forsyth Cnty., 505 U.S. at 131. In City of Lakewood

For its second thrust, the Township asserts that the Pennsylvania

Municipalities Planning Code, 53 Pa. Stat. § 10101 et seq. (hereinafter, "MPC"),

"governs virtually every aspect of zoning and land development, including denial

of permits, . . . consideration of variances, . . . [and] applicable time periods in

---

(as set forth in the body of this memorandum), the Supreme Court indicated that the administrator's implementation and interpretation should be supported by evidence of a "well-understood and uniformly applied practice" that "has virtually the force of a judicial construction." City of Lakewood, 486 U.S. at 770 n.11. See also Ward v. Rock Against Racism, 491 U.S. 781, 793 (1989) (adopting narrowing construction of sound amplification regulations where "[t]he District Court expressly found that the city's policy is to defer to the sponsor's desires concerning sound quality"). Presumably, it is by way of such evidence that the implementation and interpretation can be considered "authoritative." So far so good.

But in apparent conflict with Forsyth Cnty. and City of Lakewood, the Third Circuit reasoned in Conchatta that "[p]ast practice [even in combination with the administrator's representation as to current enforcement intentions] does not constitute a narrowing construction because it does not bind the enforcement agency, which could, at some point in the future, decide to target a broader range" of activity. 458 F.3d at 265. And in apparent conflict with Conchatta and the Supreme Court's decisions requiring evidence of an administrator's authoritative construction, the Third Circuit in Nationalist Movement v. City of York found a narrowing construction in, of all things, the city's concession at oral argument, and this "despite seemingly contrary language" in the ordinance itself. 481 F.3d 178, 184 (3d Cir. 2007).

The Court's holding that the Township has not supplied a limiting construction in the case at bar is nevertheless consistent with all of these precedents – even City of York (which takes the most permissive view) – because the Township's briefs have hedged on whether the Township actually views itself as bound to follow Coll. Twp. Code § 200-49.B, time limits supplied by the Municipalities Planning Code, or any other rule.

which to act on permits and applications." (Def.'s Summ. J. Opp'n Br. at 23). But the Township fails (in what must be criticized as an instance of highly dubious advocacy) to cite a single provision of the MPC that governs the sign permitting process in any aspect material to Nittany's contentions.

Neither opposing parties nor this Court should be put in the position of shadowboxing arguments a litigant is too craven to offer as more than a feint. In any event, the Court on its own initiative has not found any applicable MPC provisions that come to the Township's aid, with one possible exception, 53 Pa. Stat. § 10910.2, which sets forth the findings that shall be made by a zoning hearing board before granting a variance.[22]

_____

[22]In full, 53 Pa. Stat. § 10910.2 provides:

(a) The board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. The board may by rule prescribe the form of application and may require preliminary application to the zoning officer. The board may grant a variance, provided that all of the following findings are made where relevant in a given case:
(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity

Yet even assuming that § 10910.2 guides the Township's Zoning Hearing Board, the Board's discretion is not sufficiently circumscribed. The source of mischief is § 10910.2's requirement that the board condition a variance on its finding "[t]hat the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare." 53 Pa. Stat. § 10910.2(a)(4). A prior restraint that empowers the licensor to bar speech on the ground that the communication is "detrimental to the public welfare" almost by definition invests the licensor with excessive discretion. <u>See Desert Outdoor Adver. v. City of Moreno Valley</u>, 103 F.3d 814, 818 (9th Cir. 1996) (sign permit criteria including city's determination

---

with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

(b) In granting any variance, the board may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of this act and the zoning ordinance.

49

that sign would "not have a harmful effect upon the health or welfare of the general public" and "not be detrimental to the welfare of the general public" insufficiently confined discretion). <u>See also Shuttlesworth</u>, 394 U.S. at 150-51 (ordinance conditioning public demonstration permit on city's determination that demonstration was consistent with "public welfare, peace, safety, health, decency, good order, morals or convenience" fell "squarely within the ambit" of unconstitutionality). <u>Cf. Melrose v. City of Pittsburgh</u>, 613 F.3d 380, 392-93 (3d Cir. 2010). At least in the absence of a limiting construction – which the Township does not supply and the Court has not found – the Township's standard for granting a variance insufficiently confines the Zoning Hearing Board's discretion.

In accordance with the foregoing, the Court holds that the Township's Sign Ordinance is unconstitutional for failing to specify a limitation on the time within which the Township will grant or deny a sign permit application; for empowering the Township to withhold a permit from an applicant for an off-premises sign until the applicant submits "any additional information requested" by the Zoning Officer; and for failing to set forth sufficiently circumscribed criteria to guide Township officials in their decision to grant or deny a variance.[23]

---

[23]In reaching this holding, the Court has no reason to doubt the good faith of the Township and its officials in reviewing sign permit applications. One lodestar of the law that governs prior restraints, however, is the principle that the exercise

50

**(e)    Severability**

Having held that aspects of the Sign Ordinance's permit requirement are

unconstitutional, the Court must determine whether the invalid aspects of the

Ordinance should be severed so as to leave the remainder in place.

"Severability of a local ordinance is a question of state law . . .." City of

Lakewood, 486 U.S. at 772. Under Pennsylvania law, the Sign Ordinance's

provisions are, if possible, to be considered severable, see 1 Pa. Cons. Stat. Ann. §

1925; Commonwealth Dept. Of Educ. v. First School, 471 Pa. 471, 370 A.2d 702,

705 (1977) ("The public policy of this Commonwealth favors severability."), and

from the inclusion of a severability provision in the Township's Code, Coll. Twp.

Code § 1-14, a presumption arises that the Township would have enacted the

Ordinance absent any unconstitutional parts, First School, 370 A.2d at 706.

Accordingly, the Court should give effect to the Township's severability intention,

unless the Ordinance's invalid provisions are "so interwoven as to be inseparable"

from the valid ones. Saulsbury v. Bethlehem Steel Co., 413 Pa. 316, 196 A.2d 664,

666 (1964).

---

of First Amendment freedoms should not depend – or should depend as little as
possible – on the good faith of those implementing the restraint. See City of
Lakewood, 486 U.S. at 770. Thus whether Township officials in fact do or do not
use the Sign Ordinance's permit requirement as a subterfuge for discrimination
against undesirable speakers or messages is beside the point.

The Ordinance's omission of a specific limitation on the period for processing sign permit applications pervasively infects the Ordinance's permit requirement. Cf. Lamar Co. v. City of Marietta, Georgia, 538 F. Supp. 2d 1366, 1375 (N.D. Ga. 2008) ("The Sign Code's defects are its unlimited discretion and its lack of time limits, both of which affect the entire permitting scheme embodied in the Sign Code"). Unless a processing deadline is inserted into the Ordinance – something the Court cannot do since severance, as the term suggests, is about paring away unconstitutional parts of statutes, not rewriting them – every person whose right to communicate is conditioned on obtaining a sign permit will be subject to an unconstitutional prior restraint. Accordingly – even before considering the severability of the Ordinance's provision empowering the Township to withhold a permit from an off-premises sign applicant until the applicant submits "any additional information requested" by the Zoning Officer – the Court holds that all clauses of the Ordinance implementing the permit requirement must be struck.

Likewise, the Ordinance's variance provision must fall. Assuming the Ordinance supplies no criteria whatsoever for granting or denying a variance, this Court cannot supply them. On the other hand, assuming the Township's Zoning Hearing Board is guided by the criteria set forth in 53 Pa. Stat. § 10910.2, the

Court would not sever that section's problematic provision, § 10910.2(a)(4) (in relevant part, conditioning variance on finding "[t]hat the variance, if authorized, will not . . . be detrimental to the public welfare"), because that provision is integral to the criteria taken as a whole. Indeed, stating the "well-settled" standards governing the grant of a variance, the Supreme Court of Pennsylvania has written that, at heart, "[t]he party seeking the variance bears the burden of proving" just two things: "that (1) unnecessary hardship will result if the variance is denied, and (2) the proposed use will not be contrary to the public interest." Wilson v. Plumstead Twp. Zoning Hr'g Bd., 594 Pa. 416, 936 A.2d 1061, 1065 (2007) (quoting Valley View Civic Assoc. v. Zoning Bd. of Adjustment, 501 Pa. 550, 462 A.2d 637, 640 (1983)).

Since the Zoning Hearing Board's assessment of what is in the "public interest" is at the very heart of the decision to grant or deny a variance under § 10910.2, the Court concludes that severance cannot save the variance provision of the Township's Ordinance, assuming the Ordinance incorporates § 10910.2. Ultimately, whether the Ordinance incorporates § 10910.2 or is completely standardless, the variance provision cannot survive.

Accordingly, the Court holds that all of the Sign Ordinance's clauses implementing the permit requirement, as well as the Ordinance's variance

provision, are void.

It should be clear, however, that although the Court's holdings <u>supra</u> void all of the Sign Ordinance's clauses implementing the permit requirement, this does not render the Ordinance a dead letter. Recall that the Ordinance's pitfalls all relate to its function as a <u>prior restraint</u>. But that is not the Ordinance's only function. The Ordinance also sets forth substantive regulations with which signs must comply once they are erected (regulations that, as explained <u>supra</u>, are either valid or unchallenged by Nittany, or which Nittany has no standing to contest), as well as an enforcement mechanism for ensuring compliance. Thus, assuming that a double-faced freestanding sign of 756 square-feet (like Nittany's proposed signs) is erected in the Township, the sign violates the Sign Ordinance and the sign owner is therefore subject to issuance of a "notice of violation" and to payment of a nominal $50 fine. Coll. Twp. Code § 136-6. If the sign owner fails to cure the violation, he may be subject to an enforcement action in court, escalating fines, and/or imprisonment. Coll. Twp. Code § 136-7.

This after-the-fact enforcement regime is neither properly characterized as a prior restraint, <u>see Prime Media</u>, 485 F.3d at 351-52, nor is it infected by the unbridled discretion that made the Ordinance's permit requirement unconstitutional. Since the Ordinance's permit scheme and after-the-fact

enforcement regime are separable, and because there is no reason to think the Township, forced to abandon its permit requirement, would have written its Ordinance to abandon sign regulation entirely, the Court holds that invalidation of the permit requirement does not invalidate the Ordinance to the extent that it regulates signs once they are erected.

**(f)      Remedies**

In its amended complaint, Nittany requests, <u>inter alia</u>, a declaration of the Sign Ordinance's unconstitutionality; a permanent injunction against enforcement of the Ordinance; an order directing the Township to allow the erection of Nittany's five proposed signs; an award of consequential, general, and nominal damages; and costs and expenses allowed under 42 U.S.C. § 1988, including attorneys's fees. (Am. Compl. at 14-15).

The Court will declare those aspects of the Ordinance implementing a permitting scheme, as well as the Ordinance's variance provision, unconstitutional, and will enjoin enforcement of the permitting scheme in its current form.

The Court will deny all other relief. The Court is in no position to order the Township to allow the erection of Nittany's signs. At § 170-23., the Township's Sign Ordinance states that "[e]very sign and all parts thereof, including framework, supports, background, anchors and wiring systems, shall be constructed and

maintained in compliance with the Building, Electrical and Fire Prevention Codes

as they now exist or as they may hereafter exist." The Township's building,

electrical and fire prevention codes have not been challenged by Nittany, and the

Court is without information as to whether Nittany's methods of constructing its

signs will be in compliance. Indeed, for what it's worth, it appears that all five

proposed signs were respectively denied building permits in March and June, 2012

(for reasons unknown to the Court). (See Def.'s Ex. 2, Apr. 10, 2013, ECF No. 44-

5). Therefore, an order directing the Township to allow Nittany to erect signs is

inappropriate and will not issue.

The Court will also deny Nittany's request for damages and attorney's fees.

Nittany's victory is confined to its overbreadth challenge, and damages "are

unavailable for an overbreadth challenge." Outdoor Media Grp., Inc. v. City of

Beaumont, 506 F.3d 895, 907 (9th Cir. 2007). As applied, the Township's

Ordinance did not violate Nittany's First Amendment rights – each of its

applications were processed in two weeks or less and it did not seek a variance –

and "§ 1983 damages . . . are available only for violations of a party's own

constitutional rights." Advantage Media, 456 F.3d at 802 (emphasis added). See

also City of York, 481 F.3d at 183 n.3 ("Although we find that [plaintiff] can

maintain its facial challenge, we find its as-applied challenge to be completely

without merit. As noted above, the City allowed [the event for which plaintiff sought a permit] to take place as scheduled and charged [plaintiff] a $1 nominal fee. As such, [plaintiff] has no legitimate basis to challenge the application of the Ordinance to it."). Accordingly, damages and attorneys's fees are unavailable to Nittany. <u>Advantage Media</u>, 456 F.3d at 802.

## V.      Conclusion

Consistent with the foregoing,  plaintiffs's motions for partial summary judgment and for permanent injunctive relief (ECF Nos. 25 & 28) are each granted in part and denied in part.

                              BY THE COURT:


                              <u>s/Matthew W. Brann     </u>
                              Matthew W. Brann
                              United States District Judge