IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NITTANY OUTDOOR ADVERTISING, LLC and STEPHANAS MINISTRIES, | : : : : | Case No. 4:12-cv-00672 |
| Plaintiffs | : : | (Judge Brann) |
| v. | : : | |
| COLLEGE TOWNSHIP, | : : | |
| Defendant. | : | |

**MEMORANDUM**

July 22, 2014

For the following reasons, the motion for reconsideration filed by plaintiffs Nittany Outdoor Advertising, LLC and Stephanas Ministries (June 2, 2014, ECF No. 50) is granted in part and denied in part.

**I.   Background**

On May 20, 2014, this Court issued a Memorandum and Order granting in part and denying in part motions for partial summary judgment and permanent injunctive relief filed by plaintiffs Nittany Outdoor Advertising, LLC and Stephanas Ministries (hereinafter, the Court will refer to the plaintiffs collectively as "Nittany"). (ECF Nos. 47 & 48). To avoid redundancy, the Court assumes familiarity with its previous Memorandum and Order.

1

On June 2, 2014, Nittany filed a motion for reconsideration of two of the Court's holdings. (ECF No. 50). First, Nittany argues that the Court erred in holding that Nittany is not eligible for attorney fees. Second, Nittany argues that the Court erred in holding that the unconstitutional provisions of defendant College Township's Sign Ordinance should be severed from the Ordinance, leaving the remainder enforceable.

## II.     Standard of Review

Parties may request the Court's reconsideration of a motion for any of the reasons a party may seek to have the Court alter or amend judgment, among them the "need to correct [a] clear error of law or prevent manifest injustice." Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d cir. 2010). See also L.R. 7.10 (recognizing motion for reconsideration).

## III.    Discussion

### (a)    Attorney Fees Eligibility

As Nittany points out, the parties's briefs on Nittany's motions for partial summary judgment and permanent injunctive relief did not address Nittany's eligibility for attorney fees. (Pls. Recons. Supp. Br., June 2, 2014, ECF No. 51 at 3 n. 1). Boldly going where no party in this case had gone before, always a

dangerous enterprise, see generally Star Trek (NBC 1966-1969 (original series)),[1] the Court conflated Nittany's entitlement to damages with its eligibility for attorney fees, concluding that Nittany was out of the money with respect to both.

But as Nittany points out, the two issues are not conterminous. Indeed, although Nittany is not entitled to damages, it has been awarded an injunction barring the Township from enforcing the Sign Ordinance's permit requirement and variance procedures, and thus is eligible for attorney fees.

Under 42 U.S.C. § 1988, the "prevailing party" in a § 1983 action is eligible for attorney fees. "A plaintiff 'prevails,'" the Supreme Court has held, "'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" Lefemine v. Wideman, 133 S. Ct. 9, 11 (2012) (quoting Farrar v. Hobby, 506 U.S. 103, 111-12 (1992)). The Supreme Court has "repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy that test." Lefemine, 133 S. Ct. at 11.

Although Nittany's victory is at best partial and fails to achieve its loftier goals – a declaration of the Sign Ordinance's unconstitutionality in toto, a corollary

---

[1] See also Fayviard, LLC v. UGI Storage Co., 2014 WL 2565669, at *5 (M.D. Pa. 2014) ("[G]enerally, thoughtful and amply-supported legal opinions are built, if at all, upon thoughtful and amply-supported briefs from the parties.").

injunction against enforcement, and consequential damages for enforcement heretofore – it does materially alter the legal relationship between Nittany and the Township. The permit requirement (and its infirmities) previously stood as an obstacle to Nittany's communications; it does no longer because the Township is enjoined from enforcing it.

There may be additional obstacles preventing Nittany from installing its proposed signs legally in the Township, but the existence of these additional obstacles does not mean that Nittany has not "prevailed" for purposes of § 1988. See McQueary v. Conway, 614 F.3d 591, 603 (6th Cir. 2010) ("A plaintiff crosses the threshold to 'prevailing party' status by succeeding on a single claim, even if he loses on several others and even if that limited success does not grant him the 'primary relief' he sought." (quoting Tex. State Teachers Ass'n, 489 U.S. 782, 790-91 (1989))).[2] Likewise, Nittany's reliance on the overbreadth doctrine does not make it ineligible for fees. McQueary, 614 F.3d at 603-04.

For the foregoing reasons, the Court will grant Nittany's motion to reconsider the Court's previous holding with respect to eligibility for attorney fees.

---

[2]Generally, "'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award," not to the issue of whether the plaintiff is a "prevailing party" eligible for fees. Farrar, 506 U.S. at 114 (quoting Hensley v. Eckerhart, 461 U.S. 424 (1983)).

**(b)     Severability**

Nittany offers two arguments for reconsideration of the Court's prior holding that the Sign Ordinance's unconstitutional permit and variance provisions should be severed from the Ordinance, leaving the remainder enforceable. First, Nittany asserts that the Court's severability determination is inconsistent with Rappa v. New Castle Cnty., 18 F.3d 1043 (3d Cir. 1994). (See Pls. Recons. Supp. Br. at 9-10). Second, Nittany argues that the Court's determination "ignores legislative intent [because] the Ordinance was drafted" to require a person to obtain permission before posting a sign, and "[a]fter the severing of the permit regulations, the exact opposite scenario has occurred – signs can be erected without permission and then the Township must take affirmative action to force removal of signs that are determined not to comply." (Id. at 11-15).

In Rappa, Judge Becker analyzed a Delaware statute that regulated outdoor advertising by way of a general ban subject to nine enumerated exceptions. 18 F.3d at 1051-52. After holding that the statute's exception for "signs announcing a town, village, or city or advertising itself or its local industries, meetings, buildings, historical markers, or attractions" constituted unconstitutional content discrimination, Judge Becker turned to the question of whether the exception

should be severed, leaving the general ban and the other eight exceptions intact and enforceable. Id. at 1072. After setting forth the general rule – that severability is appropriate where the enacting body intended the statute to be severable and excision can give effect to independent purposes of the statute – Judge Becker reasoned as follows:

> If we eliminated the exception . . . regarding advertising local industries and meetings, the rest of the statute could surely function independently. However, we are unwilling to sever the exception, because our severability inquiry here has a constitutional dimension. Eliminating the offending exception would mean that we would be requiring the State to restrict more speech than it currently does. All existing restrictions would apply, plus there would be a restriction on signs advertising local industries and meetings. To our knowledge, no court has ever mandated issuance of an injunction such as that, and we decline to be the first.
>
> . . . .
>
> We refuse to strike down the exception in part because of the special status of speech in our constitutional scheme, a scheme which generally favors more speech. A second reason is that if courts were to sever exceptions from content discriminatory statutes, individuals would lose much of their incentives to challenge such statutes, because those whose speech is banned would often not benefit from the remedy. . . . Thus, we hold that the proper remedy for content discrimination generally cannot be to sever the statute so that it restricts more speech than it did before – at least absent quite specific evidence of a legislative preference for elimination of the exception. Absent a severability clause much more specific than [Delaware's "general severance provision" (i.e., the severance provision applicable to Delaware's entire statutory code, not found in the "statute itself")], we refuse to assume that the Delaware legislature would prefer us to sever the exception and restrict more speech than to declare [the statute as a whole] invalid.

Id. at 1072-73 (emphasis in original).

Nittany draws an analogy between the unconstitutional variance provision in the Township's Sign Ordinance and Delaware's unconstitutional exemption in Rappa. The variance provision states that the Township's Zoning Hearing Board (hereinafter, "ZHB") may grant exceptions to the Ordinance's general prohibitions on signs. Coll. Twp. Code § 170-27. "By striking the variance provision, but leaving all non-permitting regulations intact," argues Nittany, "the Court eliminated the exceptions, thereby requiring the Township to restrict more speech than it previously did." (Pls. Recons. Supp. Br. at 9). "[I]n such circumstances severance is inappropriate" under Rappa, Nittany concludes.

The Court disagrees. Rappa held "that the proper remedy for content discrimination generally cannot be to sever the statute so that it restricts more speech than it did before – at least absent quite specific evidence of a legislative preference for elimination of the exception" – and that Delaware's "general severance provision" was not specific enough to overcome this general rule. Rappa, 18 F.3d at 1073. But in the case at bar, the Court is not remedying content discrimination. More importantly, evidence of the Township's intent is not drawn solely from Pennsylvania's general severability statute, 1 Pa. Cons. Stat. Ann. § 1925; Pap's A.M. v. City of Erie, 553 Pa. 348, 719 A.2d 273, 280 n.8 (1998) (local

ordinances are construed in accordance with 1 Pa. Cons. Stat. Ann. § 1925), rev'd on other grounds, 529 U.S. 277 (2000), but also from the Township's Code itself, Coll. Twp. Code § 1-14.[3]

---

[3]Indeed it may be the case that Chapter 170 of the Code – entitled "Signs" – was accompanied by its own severability clause. The Township's online Code provides a brief history of the Sign Ordinance, which says that the Ordinance was

> [a]dopted by the Township Council of the Township of College [on May 19, 2005] by Ord. No. O-05-09 [and] amended in its entirety [on August 21, 2008] by Ord. No. O-08-05. Editor's Note: Section 5 of this ordinance provided for severability, stating that if any sentence or clause, section or part of the ordinance is found unconstitutional, illegal or invalid, such finding would not affect or impair any of the remainder and that said ordinance would have been adopted had such part not been included.

http://www.ecode360.com/10702393 (emphasis in original).

But even without this chapter-specific clause, the Code's severability clause should be sufficient to express the Township's "legislative preference." The Township's ordinances are severable on the basis of Pennsylvania's general severance provision alone. See Paps A.M., 719 A.2d at 280 n.8 (1998) (local ordinances are construed in accordance with 1 Pa. Cons. Stat. Ann. § 1925). Once the Township has reaffirmed Pennsylvania's general preference for severability by providing, as it has, that "[i]t is hereby declared to be the intent of the Township Council that [the ordinance enacting the Code] and the Code would have been adopted if [an] illegal, invalid or unconstitutional clause, sentence, subsection, section, article or part thereof had not been included therein," Coll. Twp. Code § 1-14, the Township should not be required to repeat itself ad nauseam for its preference to be clear.

While significant weight should be given to the "constitutional dimensions" of severability by presuming that legislators do not lightly restrict expression, competing constitutional concerns, namely the separation of powers, oblige the

Further, the provision declared unconstitutional in Rappa is very different from the Township's variance provision. The provision in Rappa expressed Delaware's desire to permit outdoor advertisements for local industries and meetings. Therefore, the Circuit Court could reasonably doubt whether the state would have enacted an alternative statute banning such advertisements. See Rappa, 18 F.3d at 1073 ("[W]e refuse to assume that the Delaware legislature would prefer us to sever the exception and restrict more speech . . . ."). By contrast, it is difficult to see how the variance provision reflects the Township Supervisors's strong desire to permit an additional type of signage. Indeed the provision seems to reflect the Supervisors's determination that, as a general matter, additional signage should not be permitted in the Township; had the Township Supervisors thought it important to permit an additional type of signage, that type would have been enumerated specifically in the Ordinance – as many other types were. Thus, unlike with the provision at issue in Rappa, there is little reason to think that the variance provision – merely a safety valve allowing the ZHB to address unspecific and unforeseen circumstances – was the sine quo non of the Township's enactment

---

Court to be not unduly grudging in allowing the legislature to overcome this presumption. See generally Ayotte v. Planned Parenthood of. N. New England, 546 U.S. 320, 329 (2006) ("[W]e try not to nullify more of a legislature's work than is necessary, for we know that a ruling of unconstitutionality frustrates the intent of the elected representatives of the people.") (internal quotation marks omitted).

of the Sign Ordinance.

Ultimately, by severing the variance provision, the Court does not, in Judge Becker's words, "assume that the [Township] would prefer us to sever the [offending provision] and restrict more speech." Id. Rather, the Court holds that the Township would prefer us to allow it to restrict the speech it already restricts (but without the power to vary) as opposed to lifting all restrictions on signage, Ayotte v. Planned Parenthood of. N. New England, 546 U.S. 320, 329 (2006) ("After finding an application or portion of a statute unconstitutional, we must next ask: Would the legislature have preferred what is left of its statute to no statute at all?"), a determination reinforced by "collective judgment" of local governments with respect to the need to regulate signage, see generally Interstate Outdoor Adver., L.P. v. Zoning Bd. of Twp. Of Mount Laurel, 706 F.3d 527, 532 3d Cir. 2013).

For the foregoing reasons, Nittany's motion for reconsideration on the ground that the Court's decision conflicts with the teachings of Rappa will be denied.

Nittany also makes a more general argument: that the Court's severability determination "ignores legislative intent." The Court addressed this issue in its original Memorandum, and Nittany's argument on reconsideration (which is largely reiterative of its previous arguments) does not convince the Court that it

erred.

"Clearly," Nittany argues, "the Ordinance was drafted so that permission would need to be obtained prior to a sign being posted," but "[a]fter the severing of the permitting regulations, the exact opposite scenario has occurred – signs can be erected without permission and then the Township must take affirmative action to force removal of signs that are determined not to comply." (Pls. Recons. Supp. Br. at 14).

Of course Nittany is correct that the Ordinance was drafted with a permit requirement, but to make that point merely restates the question: can the permit requirement be severed from the parts of the Sign Ordinance that are valid in accordance with Pennsylvania law? See, e.g., Commonwealth Dept. of Educ. v. First School, 471 Pa. 471, 370 A.2d 702, 706 (1977) (quoting Saulsbury v. Bethlehem Steel Co., 413 Pa. 316, 196 A.2d 664, 666 (1964)) ("[W]e find that the application of Act 109 to nonsectarian nonpublic schools is not 'so essentially and inseparably connected' with the application of Act 109 to sectarian nonpublic schools that it 'cannot be presumed (that) the (Legislature) would have enacted' Act 109 solely as applied to nonsectarian schools."). This Court has already concluded that severance is readily achievable.

The Court also thinks it is unlikely that severance effects the revolution in

administration that Nittany decries. On the one hand, even when the permit requirement was enforceable, surely the Township had to at times take "affirmative action to force removal of signs" because, for example, the permit requirement was not complied with, a permitted sign did not comply with the description upon which the permit was based, or the Ordinance was not otherwise complied wtih. The citizens of College Township are generally law abiding; they are not saints. On the other hand, severing the permit requirement should not result in a significant increase in the need for "affirmative action" on the part of the Township – the major work of laws is achieved by their <u>in terrorem</u> effect, not actual enforcement. All of which supports the Court's original conclusion: "[T]he Ordinance's permit scheme and after-the-fact enforcement regime are separable, and . . . there is no reason to think the Township, forced to abandon its permit requirement, would have written its Ordinance to abandon sign regulation entirely."

For the foregoing reasons, Nittany's motion for reconsideration on the ground that the Court's severability determination ignores legislative intent will be denied.

## IV. Conclusion

Consistent with the foregoing, the motion for reconsideration filed by plaintiffs Nittany Outdoor Advertising, LLC and Stephanas Ministries is granted in

part and denied in part.

                              BY THE COURT:

                              <u>s/Matthew W. Brann</u>
                              Matthew W. Brann
                              United States District Judge