IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NITTANY OUTDOOR              :     Case No. 4:12-cv-00672
ADVERTISING, LLC and         :
STEPHANAS MINISTRIES,        :
                             :
            Plaintiffs       :     (Judge Brann)
                             :
      v.                     :
                             :
COLLEGE TOWNSHIP,            :
                             :
            Defendant.       :

**MEMORANDUM**
April 6, 2015

Pending before the Court is the Plaintiffs' (referred to collectively as

"Nittany") Motion for Attorney Fees and Expenses (ECF No. 57) pursuant to 42

U.S.C. § 1988(b), Federal Rule of Civil Procedure 54(d), and United States District

Court for the Middle District of Pennsylvania Local Rule 54.4.  The underlying

action concerned Nittany's claims under 42 U.S.C. § 1983, the First Amendment to

the United States Constitution, and the Pennsylvania Constitution.  Nittany was

partially successful in this matter and seeks compensation for its attorneys.  In a

Memorandum and Opinion, partial summary judgment was granted only in relation

to claims that College Township's Ordinance variance provision was

unconstitutionally vague, and clauses implementing the permit requirement were

1

unconstitutional.  (ECF No. 47).  All other claims, including claims that the

Ordinance was unconstitutional as-applied, were rejected.  Id.

　　For the reasons discussed herein, Nittany's Motion for Attorney Fees is

granted in part.  While the proposed hourly billing rates and proposed total hours

worked are reasonable, for reasons discussed below the total award will be reduced

based upon the limited success obtained in the underlying matter.

## I.    BACKGROUND

　　As the Parties are familiar with the particulars of the case, the Court will

only briefly address the facts necessary for consideration of this Motion.  On July

3, 2012, Nittany filed an amended complaint under 42 U.S.C. § 1983 against

Defendant College Township, claiming that College Township's public sign

ordinance violated: (1) the First Amendment to the United States Constitution as

the ordinance was "impermissibly content-based[,]" impermissibly suppressed

noncommercial speech, granted unfettered discretion to township officials to

license speech, and was not narrowly tailored; and (2) was unconstitutionally

exclusionary under the Pennsylvania Constitution.  (ECF No. 11).  On July 17,

2012, College Township filed an Answer and a Motion to quash.  (ECF Nos. 14,

15).  On January 15, 2013, that Motion was denied.  (ECF No. 24).

　　On March 1, 2013, Nittany filed a Motion for Partial Summary Judgment

2

and a Motion for a Permanent Injunction.  (ECF Nos. 25, 28).  After reviewing the briefs submitted by the parties, on May 20, 2014 this Court granted in part and denied in part both of Nittany's motions.  (ECF No. 47).  Nittany subsequently filed a Motion for Reconsideration, which this Court granted only as to Nittany's request for attorney fees.  (ECF No. 55).  Thereafter, Nittany filed the Motion *sub judice* seeking attorney fees.

## II.    DISCUSSION

### A.    <u>Statutory Authority to Award Attorneys Fees</u>

In <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, the United States Supreme Court reaffirmed the "American Rule" that each party in a lawsuit pays its own attorney's fees unless there is statutory authority altering this status quo. 421 U.S. 240 (1975).  "In response Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizing the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation." <u>Id.</u> "The purpose of  § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 429 (1983) (quoting H. R. Rep. No. 94-1558, at 1 (1976)).

Accordingly, the Court retains discretion to award reasonable attorneys fees and costs to the prevailing party in civil rights litigation.  The statutory authority

for this discretion is 42 U.S.C. § 1988(b), which states:

> In any action or proceeding to enforce a provision of sections 1981,
> 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law
> 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom
> Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious
> Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. §
> 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A.
> § 2000d et seq.], or section 13981 of this title, the court, in its
> discretion may allow the prevailing party, other than the United
> States, a reasonable attorney's fee as part of the costs[.]

To merit an award of attorney's fees under this statute, a plaintiff must first

establish that he was the "prevailing party." Hensley, 461 U.S. at 433.  Next, the

fees and costs must be reasonable.  See 42 U.S.C. § 1988; Brytus v. Spang & Co.,

203 F.3d 238, 242–43 (3d Cir. 2000).  Once it is established that the plaintiff

prevailed, the court must determine reasonable fees under the lodestar formula,

which is the "number of hours reasonably expended on the litigation multiplied by

a reasonable hourly rate." Hensley, 461 U.S. at 433; Maldonado v. Houstoun, 256

F.3d 181, 184 (3d Cir. 2001).  "The amount of the fee, of course, must be

determined on the facts of each case." Hensley, 461 U.S. at 429–30.

"The party seeking attorney's fees has the burden to prove that its request for

attorney's fees is reasonable." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.

1990).  "To meet its burden, the fee petitioner must 'submit evidence supporting

the hours worked and rates claimed.'" Id. (quoting Hensley, 461 U.S. at 433).

Once the petitioner meets this burden, "the party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." Id.

"The district court cannot 'decrease a fee award based on factors not raised at all by the adverse party.'" Id. (quoting Bell v. United Princeton Props., Inc., 884 F.2d 713 (3d Cir. 1989)). "Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." Id.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation[.]" Hensley, 461 U.S. at 433. "The district court should exclude hours that are not reasonably expended." Rode, 892 F.2d at 1183. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." Id.

"After determining the number of hours reasonably expended, the district court must examine whether the requested hourly rate is reasonable." Id. "Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." Id. (citing Blum v. Stenson, 465 U.S. 886, 895 (1984)). This "forum rate rule" dictates that, generally "an 'out-of-town lawyer would receive not the hourly rate prescribed by his district but rather the

5

hourly rate prevailing in the forum in which the litigation is lodged.'" Interfaith

Cmty. Org. v. Honeywell Intern., Inc., 426 F.3d 694, 704 (3d Cir. 2005) (quoting

Report of the Third Circuit Task Force on Court Awarded Attorney Fees, 108

F.R.D. 237, 261 (1986)).

The forum rate rule contains two exceptions: "first, when the need for the

special expertise of counsel from a distant district is shown; and, second, when

local counsel are unwilling to handle the case." Id. at 705 (internal quotations and

citations omitted).  "Thus, when a party can show that it qualifies for either

exception, the Court may award attorney fees based on prevailing rates in the

community in which the parties' attorneys practice." Id.

Finally, where a plaintiff has achieved limited success in the litigation,

attorney fees may be reduced using one of two methods. Hensley, 461 U.S. at 434.

Where the suit presents "distinctly different claims for relief that are based on

different facts and legal theories[,]" the hours spent on non-meritorious claims may

be severed from hours spent litigating meritorious claims. Id. at 434-35.  In

contrast, where claims "involve a common core of facts" a district court must

"focus on the significance of the overall relief obtained by the plaintiff in relation

to the hours reasonably expended on the litigation." Id. at 435.  Thus, where a

plaintiff has achieved limited success, "[t]here is not precise rule or formula" that

the district court must follow; rather, it may exercise its sound discretion to reduce the total award.  Id. at 436-37.

### B.    Plaintiffs' Attorney Fees Request Are Not Reasonable

#### 1.    Nittany is a Prevailing Party

College Township first objects to the Motion for Attorney Fees on the grounds that Nittany is not a "prevailing party" under 42 U.S.C. § 1988(b).  (ECF No. 59).  This Court previously addressed the issue in its Memorandum granting in part Nittany's motion for reconsideration.  (ECF No. 55).  In that Memorandum, it was noted that Nittany's partial victory "materially alter[ed] the legal relationship between Nittany" and College Township, therefore making Nittany statutorily eligible for attorney fees.  Id.  College Township has presented no evidence that convinces this Court that its previous ruling was factually incorrect or legally unsound, and therefore this argument is rejected.[1]

#### 2.    Nittany's Attorneys Meet Their Prima Facie Burden for Fee Entitlement

The initial burden rests with Nittany to prove that its request for fees is reasonable by submitting competent evidence supporting the hours worked and rate claimed.  Rode, 892 F.2d at 1183.  Only if Nittany does so will the burden then

---

[1] To the extent that College Township seeks to challenge this Court's previous ruling, such a challenge is patently untimely.  See, Local Rule 7.10.

7

shift to College Township to challenge, with specificity, the reasonableness of the requested fees.  Id.

Nittany's attorneys have met their initial burden establishing a *prima facie* case for fees through the submission of numerous affidavits and exhibits.  Two different law firms represented Nittany on this matter: two attorneys from the law firm Webb, Klase & Lemond, LLC ("WKL") and one attorney from Elion, Wayne, Grieco, Carlucci & Shipman, P.C. ("Elion, Wayne").  E. Adam Webb, Esquire, a partner at WKL, claims an hourly rate of $410 per hour for 118 hours work, while Matthew C. Klase, Esquire, also a partner with WKL, seeks an hourly rate of $330 per hour for 214.3 hours worked.  (ECF Nos. 58, 60).  In total, the WKL attorneys seek attorney fees for the lodestar in the total amount of $119,679.  Id.  David C. Shipman, Esquire ("Shipman"), a partner at Elion, Wayne, requests an hourly rate of $200 for 2.9 hours of work, for a total sum of $580.  Id.  The two firms request compensation for costs in the amount of $525.80.[2]  Id.

College Township disputes the reasonableness of the claimed attorney hours worked for all attorneys, and challenges the hourly rates for WKL.  Accordingly, the Court addresses these issues in turn.

---

[2] In their reply brief, Nittany asserts, likely in error, that costs total $535.80.  Elion has documented $350 in costs related the filing of this action.  (ECF No. 54, Ex. 2).  WKL in turn has submitted documentation supporting $175.80 in costs.  (ECF No. 54, Ex. 1).  Thus, the documentation submitted supports costs of $525.80, not $535.80.

2.      Plaintiffs Attorneys' Claimed Hours Worked Will Not be
        Reduced

Nittany's attorneys certified that they have worked a total of 335.2 hours on

this case.  (ECF Nos. 58, 60).  However, recognizing the general duty to reduce the

claimed hours for cases that included unsuccessful claims, Nittany proposed

reducing its allowable hours to 234.4.  (ECF No. 58, 60).

In that vein, Nittany acknowledges that this Court denied many of its claims,

including those asserting that College Township's ordinance constituted content-

based discrimination.  Id.  However, Nittany asserts that "given the related nature

of Plaintiffs' constitutional claims it is impossible to divide with mathematical

precision the time expended on a claim-by-claims basis[.]"  Id.  Nittany therefore

proposed reducing the time spent on pleadings by twenty percent because

approximately twenty percent of the pleadings addressed issues that were

ultimately deemed to be non-meritorious.  Id.  Nittany similarly proposes reducing

the hours spent on Motions for Summary Judgment, Injunction, and

Reconsideration by fifty-five percent.  Id.  Nittany reaches this number by dividing

the number of pages in the supporting briefs that are attributable to unsuccessful

claims by the total number of pages in those briefs (i.e. 46 pages attributable to

unsuccessful claims, divided by 86 pages total).  Id.

In response, College Township argues that the requested hours, even after

the reduction offered by Nittany, are excessive "due to [Nittany's] extremely limited success." (ECF No. 59). Furthermore, College Township contends that Nittany's attorneys spent an excessive amount of time on research. Id. Given the frustrating lack of explanation for College Township's charge that time spent on research was excessive, this Court is left in the difficult position of reaching a conclusion absent the benefit of any real analysis or articulation on College Township's part.

Further compounding this difficulty is WKL's habit of simply lumping all activities from a given day in one overarching time entry. For example, an entry for Webb dated April 10, 2012, claiming 4.5 billable hours, reads "[e]dit and revise complaint; research re new plaintiffs; emails to/from clients re same; call from local Counsel re suit; prepare exhs for same; research re local rules; prepare cover sheet." (ECF No. 58, Ex. 1). This unseemly habit renders any attempt to delineate hours spent on legitimate research virtually impossible. However, in reviewing the entirety of WKL's time sheets, and comparing the time spent on each task as a whole with the relative complexity of the case, it does not appear that the time spent was excessive. Therefore, the hours claimed by WKL will not be reduced due to excessive time spent on research.

College Township did not challenge any other aspects of Nittany's attorneys

claimed hours expended, and the Court may not reduce unchallenged hours *sua sponte*.  See Interfaith, 426 F.3d at 711.  Therefore, the lodestar shall include the full number of hours claimed.

### 3.     A Forum Rate Rule Exception Applies

Once the number of hours reasonably expended is fixed, the Court turns to consideration of the appropriate hourly rate.  Rode, 892 F.2d at 1183.  As previously discussed, "in most cases, the relevant rate is the prevailing rate in the forum of the litigation."  Interfaith, 426 F.3d at 705.  However, the WKL attorneys argue that they qualify for an exception to the forum rate rule because of their special expertise in this area of law.  See id.; ECF No. 58, pp. 7–11.

To invoke this exception to the forum rate rule, counsel must show "the need for the special expertise of counsel from a distant district."  Interfaith, 426 F.3d at 705.  In doing so, it must be shown that "other counsel practicing in [the region] did not possess 'special expertise'" necessary to adequately prosecute the matter. Id.  Where counsel establishes that an exception applies, "the 'relevant community' for determining a prevailing market rate is the forum in which the attorneys regularly practice, not the forum of the litigation."  Id.

WKL's attorneys have demonstrated that they are particularly experienced in this esoteric area of the law.  There is little doubt that WKL is exceptionally well

versed and experienced in First Amendment billboard law, having handled dozens

of cases throughout the country.  The only true question then is whether WKL has

sustained its burden of demonstrating that no local attorneys were able to handle

this matter.

While College Township argues that this action was at its core a simple 1983

action involving First Amendment issues for which numerous attorneys in the area

are qualified to handle, this assertion understates the relative complexity of the

issues presented.  This case did not involve a simple 1983 action.  Rather, it

involved a challenge to purported First Amendment violations in relation to

College Township's sign ordinance and its billboard restrictions.  As the Supreme

Court has noted "[e]ach method of communicating ideas is 'a law unto itself' and

that law must reflect the 'differing natures, values, abuses and dangers' of each

method." Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 501 (1981)

(quoting Kovacs v. Cooper, 336 U.S. 77, 97 (1949)).  See also, Interstate Outdoor

Adver., L.P. v. Zoning Bd. of Twp. of Mount Laurel, 706 F.3d 527, 531-32 (3d

Cir. 2013) (noting the unique legal requirements of billboard law).

Nittany produced affidavits asserting that no competent local counsel was

available to handle this case.  To that end, Nittany attached the sworn declaration

of Kevin Dail, a member and authorized representative of Nittany.  (ECF No. 58,

Att. 4).  Mr. Dail attested that Nittany has had "no luck finding a Pennsylvania attorney that is extremely knowledgeable about that unique legal topics that affect the outdoor advertising industry."  Id.  He further asserted that Nittany has "discussed this issue with several knowledgeable industry contacts, including fabricators, installer, and competitors, and have yet to find a Pennsylvania lawyer that specializes in 'billboard law.'"  Id.  Additionally, Nittany's usual Pennsylvania attorney, Rich Govi, Esquire, was unaware of anyone in the Commonwealth who specialized in billboard law.  Id.  This lack of success in finding local counsel forced Nittany to search outside of Pennsylvania for an expert in billboard law.  Id.

Also attached to Nittany's motion for attorney fees is the sworn declaration of David C. Shipman, Esquire, Nittany's local counsel in this matter.  Id. at Att. 2.  Mr. Shipman was admitted to the bar of the Supreme Court of Pennsylvania in 1975, and was admitted to the bar of the Middle District of Pennsylvania in 1988.  Id.  He is a member of the Lycoming Law Association, the Pennsylvania Bar Association, and the Federal Bar Association for the Middle District of Pennsylvania.  Id.  Additionally, he served as the President of the Middle District of Pennsylvania Federal Bar Association from 2000 until 2002.  Id.  Mr. Shipman is known to this Court as a competent and knowledgeable local attorney.

Mr. Shipman asserts in his declaration that he is unaware of "any lawyers in

this District who specialize in billboard law or have experience litigating the intricate issues at stake in this lawsuit." Id.  His combined experience with the local bar associations lends itself to a thorough knowledge of local attorneys, and therefore gives credence to the assertion that local attorneys are not knowledgeable in this particular field of law.  Consequently, it is apparent that there was a need for special expertise from attorneys outside of the local area, and the WKL attorneys will be awarded fees at the rate where they regularly practice, that being Atlanta, Georgia.  Interfaith, 426 F.3d at 705.

Turning to the matter of reasonable fees in Atlanta, Georgia, Nittany has produced two declarations by attorneys in the Atlanta area who are familiar with Section 1983 cases.  (ECF No. 58, Att. 5, 6).  One attorney asserts that partners in the Atlanta area earn an average rate of $200 to $600 per hour. Id. at Att. 5.  The second attorney asserts that partners in Atlanta based law firms generally charged between $250 and $900 per hour in 2010. Id. at Att. 6.  Attached to that declaration is data from the *Fulton County Daily Report* verifying these numbers. Id.  Furthermore, courts have generally awarded similar rates for attorneys based in the Atlanta, Georgia area. E.g., Gowen Oil Co., Inc. v. Abraham, No. cv-210-157, 2012 WL 1098568, at *4 (S.D. Ga. Mar. 30, 2012) (approving attorney fees ranging between $155 and $565).

14

Both WKL attorneys demonstrated that they have substantial prior experience pursuing relief for constitutional violations in the context of billboard laws.  (ECF No. 58, Att. 1, 3).  They have served as counsel in multiple civil rights cases focusing on billboard laws throughout the country.  See, e.g., Get Outdoors II, LLC v. City of San Diego, Cal., 506 F.3d 886 (9th Cir. 2007); KH Outdoor, L.L.C. v. Fulton Cnty., Ga., 587 F.App'x 608 (11th Cir. 2014).  Therefore, the rates sought are deemed reasonable; Attorney Webb is awarded a requested rate of $410 per hour, and Attorney Klase is awarded his requested rate of $330 per hour.

Finally, Attorney Shipman has requested a rate of $200 per hour for time spent in this matter.  This Court has previously held that an hourly rate between $180 and $325 per hour is reasonable for a law firm partner engaged in a Section 1983 suit.  Beattie v. Line Mountain Sch. Dist., No. 4:13-cv-02655, 2014 WL 3400975, at *10 (M.D. Pa. July 10, 2014).  Attorney Shipman, a name partner at his firm, charges a rate at the lower end of the continuum of reasonable fees, and therefore his requested rate is also approved.

Thus, applying the lodestar formula to the case at hand, a sum of $119,679 is reached.  Nittany's limited success on the merits, however, demands a downward departure from this sum.

4.    Allowable Fees Will be Reduced Due to Limited Success

15

While the Court generally agrees with the reasonableness of the hours of work and the fee rate requested by Nittany's attorneys, the total fee allowed should be reduced based on the limited success achieved by Nittany in this matter. Although Nittany's attorneys suggest a rough division of the total hours based on the pages spent in briefs arguing unsuccessful claims, this methodology is fundamentally unsound and must be rejected out of hand.[3]

As an initial matter, Nittany states that "given the related nature of Plaintiff's constitutional claims it is impossible to divide with mathematical precision the time expended on a claim-by-claim basis[.]" (ECF No. 58). This statement is entirely accurate and, for that reason, Nittany's approach must be rejected. As the Supreme Court has noted, where claims "involve a common core of facts[,]" the lawsuit "cannot be viewed as a series of discrete claims" and the district court should instead "focus on the significance of the overall relief obtained[.]" Hensley, 461 U.S. at 435.

Here, Nittany's claims all involve a common core of facts, i.e., College Township's rejection of the proposed billboards and the underlying ordinance that

---

[3] Notably, the Third Circuit has repeatedly rejected such an approach to reducing attorney fees for non-meritorious claims, stating that "mathematically deducting fees proportional to a plaintiff's losing claims is 'too simplistic and unrealistic.'" McCutcheon v. America's Servicing Co., 560 F.3d 143, 151 (3d Cir. 2009) (quoting W. Va. Univ. Hosps., Inc. v. Casey, 898 F.2d 357, 363 (3d Cir. 1990)).

led to those rejections.  The factual basis of each claim is so intertwined with the others that severing the individual claims is, as a practical matter, impossible. Therefore, the crux of the analysis must revolve around "the important factor of the 'results obtained.'"  Id. at 434.  Consequently, the Court must focus on reducing the fees awarded to a reasonable amount in relation to the results obtained.  Id. at 440; Inst. Juveniles v. Sec'y of Pub. Welfare, 758 F.2d 897, 919 (3d Cir. 1985).

It bears emphasizing that, when comparing the relief sought to the relief obtained, Nittany achieved very little success in this matter.  In that respect, although Nittany was partially successful, that success achieved none of Nittany's primary goals.

First, Nittany sought permission to erect the billboards that College Township had previously rejected, and asked this Court to enter an Order permitting these billboards.  (ECF No. 11).  This Court denied that relief, concluding that was impossible to determine whether Nittany's billboards complied with the Remaining Building Electrical and Fire Prevention Codes. (ECF No. 47, pp. 55-56).  It was also noted that Nittany's billboards failed to comply with College Township's intact Sign Ordinance and, if erected, the proposed billboards would subject Nittany to fines and possible imprisonment.  Id. at 54.  Thus, at the conclusion of the case, Nittany had failed to obtain its primary

17

goal, the legal erection of its proposed billboards

Second, Nittany filed suit in this matter alleging an as-applied constitutional violation and seeking damages resulting from that violation.  (ECF No. 11).  This Court concluded that Nittany ultimately could succeed only on an overbreadth challenge, and therefore damages were not available.  (ECF No. 47, p. 56).  Thus, Nittany failed entirely in its quest for damages.

In short, Nittany failed to secure a legal right to erect its proposed billboards, failed to establish any reasonable basis to believe its proposed billboards would be allowed at any point in the future, and failed to secure any damages related to its claims.  In no way can these results be viewed as anything other than near complete failure.  When viewed in this light, a substantial reduction to the lodestar figure is warranted in the amount of seventy-five percent.  In reaching this conclusion, the Court passes no judgment on the overall quality of the attorneys' work, which was without a doubt superior and reflective of the experience of the attorneys in this legal niche.  However, this Court is required to consider the limited success emphasized above.  See, Hensley, 461 U.S. at 440.

Furthermore, this reduction to the lodestar figure is in line with other cases throughout the country where plaintiffs have obtained similarly limited success. See, Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 319 (3d Cir. 2009) (affirming

a 75% reduction where the plaintiff prevailed on only one claim, received damages far below what she was seeking, and obtained few tangible benefits); Imaginary Images Inc. v. Evans, No. 3:08-cv-398, 2009 WL 2488004 (E.D. Va. Aug. 12, 2009) (reducing an award by 67% where plaintiff failed on its First Amendment claims, with the exception of an overbreadth and vagueness argument); Orson, Inc. v. Miramax Film Corp., 14 F.Supp.2d 721, 727 (E.D. Pa. 1998) (reduced fees by 75% to reflect the minimal damages awarded in relation to damages sought, as well as success on only one claim); Davis v. Se. Pa. Transp. Auth., 924 F.2d 51, 55 (3d Cir. 1991) (affirming a two-thirds reduction in attorney fees based on limited damages award and failure to seek equitable relief); Murphy v. Girard School Dist., 134 F.Supp.2d 431, 440 (W.D. Pa. 1999) (reducing attorney fees awarded by 85% where plaintiffs failed to obtain the primary relief sought).

Exercising the discretion vested with this Court in determining reasonable attorney fees, a seventy-five percent reduction in the lodestar amount is proper. Consequently, attorney fees are awarded to the attorneys from WKL in the total amount of $29,774.75.[4]  Attorney fees are awarded to Attorney Shipman in the amount of $145.00.  Costs are awarded to WKL in the amount of $175.80, and to

---

[4] For the same reasons requiring a reduction of hours spent on Nittany's claims, the Court will reduce the time spent on the fee petition in the same proportion.  See, Durett v. Cohen, 790 F.3d 360, 363 (3d Cir. 1986).

Elion in the amount of $350.00.

## III.    CONCLUSION

Nittany's attorneys are entitled to attorneys fees based on the reasonable hourly rates in the Atlanta, Georgia area for this type of litigation and in consideration of their skill and expertise.  Based on the limited success obtained, a seventy-five percent reduction to the lodestar amount is, however, warranted. Therefore, the Motion for Attorney Fees is granted in part.  WKL is entitled to $29,774.75 in attorney fees and $145.00 in costs.  Elion is entitled to attorney fees in the amount of $145.00, and costs in the amount of $350.00.

An appropriate Order follows.


BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge